**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Headfirst Baseball LLC, Headfirst Camps LLC, and Brendan V. Sullivan III, <br><br> Plaintiffs, <br><br> v. <br><br> Robert Elwood and Stacey Elwood, <br><br> Defendants. <br><br>——————————————— <br><br> Robert Elwood, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> Brendan V. Sullivan, III and Headfirst Professional Sports Camps LLC, <br><br> Counterclaim Defendants. | Civil Action No. 13-cv-536-RBW |

**PLAINTIFFS' RESPONSE TO SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF ELWOODS' MOTION TO DISQUALIFY
WILLIAMS & CONNOLLY LLP AS PLAINTIFF'S COUNSEL,
<u>BASED ON NEWLY DISCOVERED, DISPOSITIVE EVIDENCE</u>**

Plaintiffs Headfirst Baseball LLC, Headfirst Camps LLC, and Brendan V. Sullivan III respectfully respond as follows to the Supplemental Memorandum in Support of Elwoods' Motion To Disqualify Williams & Connolly LLP as Plaintiff's Counsel, Based on Newly Discovered, Dispositive Evidence.

Defendants' evidence is neither newly discovered nor dispositive, and it further highlights Defendants' baseless legal arguments. Accordingly, Defendants' Motion to Disqualify Williams & Connolly as Plaintiffs' counsel should be denied.

## I. Defendants' "Newly Discovered" Evidence Does Not Support Their Motion.

Defendants describe their Exhibit A as "newly discovered" and "dispositive" evidence, but it is neither. First, this email was always in the possession of Robert Elwood. The fact that Defendants are only just now reviewing emails that specifically contain the name of the attorney they claim represented Elwood casts serious doubt about the purported factual basis for the disqualification motion.

Second, this email is not "dispositive" for disqualification. Instead, it is completely consistent with both Plaintiffs' Opposition and Surreply to Defendants' disqualification motion. *See* ECF No. 20 ("Opposition"); ECF No. 26 ("Surreply"). Defendants argue that Sullivan's use of "we" and "us" in an email to Elwood somehow implies an attorney-client relationship between Elwood and Williams & Connolly ("W&C"). This is a *non sequiter*. The email provides no evidence that W&C agreed to represent or provided any advice to Elwood. Nor does it prove that W&C represented or provided any advice to any supposed "Headfirst Partnership." Instead, the email indicates that Sorensen provided advice to Sullivan, who then chose to share that advice with Elwood. But Sullivan's decision to share advice with Elwood does not make him W&C's client under some sort of transitive property argument.

To the contrary, this email confirms that W&C did not represent Elwood or a "Headfirst Partnership."  The email indicates that Sorensen spoke to Sullivan and Ted Sullivan (Sullivan's brother and the co-owner of Headfirst Baseball LLC), but not to Elwood, his supposed client.  Yet Defendants assert that (1) this email supports their allegation that Elwood was actually a client, despite the fact that Sorensen spoke *only* with Sullivan and Ted Sullivan, and (2) Sorensen chose to represent Elwood against Ted Sullivan, the son of W&C's senior partner.  Both arguments strain credulity (to say the least), remain directly refuted by the earlier-filed declarations of both Sullivan and Sorenson, and continue to have no support in the record.  Moreover, this email undermines Elwood's counterclaim allegation that "Sullivan repeatedly and expressly promised, stated and assured Elwood that he was a 50% partner in and owner of Headfirst." ECF No. 11 ¶ 115.  Instead, Sullivan states in the email that "there's a [LLC] contract involved that has his [Ted Sullivan's] name on it and limits me from doing certain things just because I decide to do them or think they're the right thing to do."  Supplement Ex. A.

Defendants also argue that W&C provided advice on "the equal partnership between Sullivan and Elwood in the Headfirst business that existed for years, notwithstanding the ownership 'on paper.'"  Supplement at 3.  Again, there is no such partnership.  Defendants' litigation strategy—hatched to try to justify years of thievery—ignores years of LLC agreements, contracts, W-2 forms, and tax returns because they are merely "paper."  Of course, Elwood signed a number of the LLC agreements, prepared the information for the tax returns, and received and used, without objection, the W-2 forms.  Furthermore, Elwood has expressly acknowledged "on paper" that the concocted 50/50 partnership did not exist.  In May 2010, for example, Elwood applied for a personal loan and was asked this simple question:  "Can you also confirm your ownership interest in Headfirst Summer Camps?"  Elwood's answer:  "0%."  Ex.

71. In 2012, Bank of America asked similar questions for a line of credit. A Bank of America client manager asserted "on paper": "Headfirst Camps is 50/50 Brendan and [Ted] and [Ted] does not have anything to do with day to day." Contrary to his position today, Elwood responded "on paper": "correct." Ex. 72.

**II.**     *Griva v. Davison* **Has Nothing To Do With This Case.**

Defendants' continued embrace of *Griva v. Davison*, 637 A.2d 830 (D.C. 1994) as their principal, if not exclusive, authority continues to make no sense and confirms that there is no basis to disqualify W&C. Here are the elements of *Griva*:

1. A law firm represented three persons during the formation of a documented, real partnership.

2. The written partnership agreement required unanimous consent of all partners to take partnership action.

3. The law firm then agreed to represent and did represent the partnership.

4. Later, a dispute arose between one of the partners and the other two partners about the business of the partnership.

5. The law firm represented the two-partner group in the dispute.

6. As part of the dispute, the single partner demanded access to the books and records of the partnership.

7. The law firm represented the partnership in denying the single partner's demand.

8. On these facts, the Court identified two perspectives about potential confect-of-interests problems for the law firm, *Griva,* 637 A.2d at 840:

    a. Because of the unanimous consent provision and because the law firm concurrently represented both the partnership and the two-partner group in the dispute, there was a potential conflict between the partnership and the two-partner group. If it was in the interests of the partnership to produce the partnership records to the single partner and if the two-partner group objected to that production, there would be a conflict.

    b. Another way to look at the same problem, said the Court, was that a deadlocked partnership cannot make a decision and a law firm representing the partnership cannot identify the partnership's interests.

3

Below appear the same *Griva* elements and, in bold, the reasons *Griva* has nothing to do with this case.  Each of the bold-face propositions is established with facts and law in Plaintiffs' initial Opposition to the disqualification motion, and in Plaintiffs' Surreply to the Defendants' misrepresentation of law concerning the Uniform Partnership Act:

1. A law firm represented three persons during the formation of a documented, real partnership.

   - **There is no documented, real "Headfirst Partnership."**  *See e.g.*, Opposition at 13-19; Opposition, Declaration of Stephen P. Sorensen ¶ 4 ("Sorensen Decl."); Opposition, Declaration of Brendan V. Sullivan III ¶¶ 27-30, 41 ("Sullivan Decl.").

   - **There is no "Headfirst Partnership" of any kind.**  *See, e.g.*, Exs. 71 ("0%"), 72 ("correct"); Opposition at 13-19, 31-33; Surreply at 2-3; Sullivan Decl. ¶¶ 27-30, 41; Sorensen Decl. ¶ 4.

   - **Until Elwood began scrambling in this litigation for a defense to his years of thievery, W&C never heard of a "Headfirst Partnership."**  *See, e.g.*, Sorensen Decl. ¶¶ 4, 6; *id.*, Declaration of Brendan V. Sullivan, Jr. ¶ 8 ("Mr. Sullivan Decl.").

   - **W&C never represented anyone in the formation of a "Headfirst Partnership."**  *See, e.g.*, Sorensen Decl. ¶ 6; Mr. Sullivan Decl. ¶ 8; Sullivan Decl. ¶ 26.

2. The written partnership agreement required unanimous consent of all partners to take partnership action.

   - **There is no written "Headfirst Partnership" agreement requiring unanimous consent.**  *See, e.g.*, Opposition at 13-18; Sorensen Decl. ¶ 4; Sullivan Decl. ¶¶ 27, 41.

   - **There is no "Headfirst Partnership."**  *See, e.g.*, Exs. 71 ("0%"), 72 ("correct"); Opposition at 13-19, 31-33; Surreply at 2-3; Sullivan Decl. ¶¶ 27-30, 41; Sorensen Decl. ¶ 4.

   - **There are no "Headfirst partners."**  *See, e.g.*, Sorensen Decl. ¶ 4; Sullivan Decl. ¶ 27.

3. The law firm then agreed to represent and did represent the partnership.

4

- **W&C never agreed to represent a "Headfirst Partnership."** *See, e.g.*, Sorensen Decl. ¶ 6; Mr. Sullivan Decl. ¶ 8; Sullivan Decl. ¶ 26.

- **W&C never represented a "Headfirst Partnership."** *See, e.g.*, Sorensen Decl. ¶ 6; Mr. Sullivan Decl. ¶ 8; Sullivan Decl. ¶ 26; Opposition at 33.

- **W&C represented Brendan Sullivan and particular limited liability companies when he authorized the representation and W&C agreed to undertake the representation.** *See, e.g.*, Sorensen Decl. ¶¶ 3, 15; Sullivan Decl. ¶¶ 35, 40; Mr. Sullivan Decl. ¶ 4.

4. Later, a dispute arose between one of the partners and the other two about the business of the partnership.

    - **There is no "Headfirst Partnership."** *See, e.g.*, Exs. 71 ("0%"), 72 ("correct"); Opposition at 13-19, 31-33; Surreply at 2-3; Sullivan Decl. ¶¶ 27-30, 41; Sorensen Decl. ¶ 4.

    - **Consequently, there is no dispute within a "Headfirst Partnership."** *See, e.g., id.*

    - **Elwood has sought equity over the years in specific Headfirst limited liability companies.** *See, e.g.*, Opposition at 16-19; Sullivan Decl. ¶¶ 22-30; Sorensen Decl. ¶¶ 8, 14.

    - **Elwood has received equity of differing percentages in certain Headfirst limited liability companies.** *See, e.g.*, Opposition at 14-16; Opposition Exs. 6, 7, 28.

    - **Elwood sought equity ownership in Headfirst Baseball LLC and later in Headfirst Camps LLC.** *See, e.g.*, Opposition at 16-19; Opposition Exs. 37-47; Sullivan Decl. ¶¶ 29, 30; Sorensen Decl. ¶¶ 11, 14; Opposition, Declaration of Edward M. Sullivan ¶ 7 ("Ted Sullivan Decl.").

    - **Elwood repeatedly acknowledged that he did not own equity in Headfirst Baseball LLC and Headfirst Camps LLC.** *See, e.g.*, Exs. 71 ("0%"), 72 ("correct"); Opposition at 16-19; Opposition Exs. 37-47; Sullivan Decl. ¶ 30; Sorensen Decl. ¶ 11.

    - **Elwood and/or independent counsel for Elwood negotiated for equity in Headfirst Baseball LLC and/or Headfirst Camps LLC.** *See, e.g.*, Opposition at 16-19; Opposition Exs. 37-47; Sullivan Decl. ¶ 30; Sorensen Decl. ¶ 11; Ted Sullivan Decl. ¶ 7.

- **W&C represented Brendan Sullivan and not Elwood in negotiations with Elwood about whether and on what terms he would receive an equity interest in Headfirst Baseball LLC or Headfirst Camps LLC.** *See, e.g.*, Sullivan Decl. ¶¶ 35, 40-43; Sorensen Decl. ¶¶ 8, 11, 12; Mr. Sullivan Decl. ¶¶ 4, 8.

- **During these negotiations, Elwood's independent counsel never objected to W&C's representation of Brendan adverse to Elwood; never suggested that W&C ever represented Elwood; never suggested that W&C had a conflict of interests; and never referenced a "Headfirst Partnership."** *See, e.g.*, Sullivan Decl. ¶ 30; Sorensen Decl. ¶¶ 8, 11.

- **Elwood never received equity in Headfirst Baseball LLC or Headfirst Camps LLC.** *See, e.g.*, Opposition at 1-2, 16-19; Sullivan Decl. ¶ 30; Sorensen Decl. ¶ 19(d).

- **The negotiations about whether Elwood would receive equity in Headfirst Baseball LLC or Headfirst Camps LLC ended when Brendan Sullivan discovered that Elwood stole more than $500,000 from the two companies.** *See, e.g.*, Sullivan Decl. ¶¶ 25, 30.

5. The law firm represented the two-partner group in the dispute.

   - **W&C represented Brendan Sullivan and not Elwood in the negotiations with Elwood about whether and on what terms he would receive an equity interest in Headfirst Baseball LLC or Headfirst Camps LLC.** *See, e.g.*, Sullivan Decl. ¶¶ 35, 40-43; Sorensen Decl. ¶¶ 8, 11, 12; Mr. Sullivan Decl. ¶¶ 4, 8.

6. As part of the dispute, the single partner demanded access to the books and records of the partnership.

   - **The analogue to Griva's demand for access to records is this lawsuit, in which Plaintiffs sue Defendants to recover the value of Elwood's theft of more than $500,000 and in which Elwood concocts an imaginary "Headfirst Partnership" as part of his defense.** *See, e.g.*, ECF No. 5; (Amended Complaint); ECF No. 11 (Counterclaim).

7. The law firm represented the partnership in denying the single partner's demand.

   - **The "Headfirst Partnership" is not a party to this case.** *See, e.g.,* ECF No. 5; ECF No. 11.

   - **W&C does not represent the "Headfirst Partnership" in this case. This fact alone is sufficient to make *Griva* completely immaterial to this case.**

*See, e.g., id.*; Sorensen Decl. ¶ 6; Mr. Sullivan Decl. ¶ 8; Sullivan Decl. ¶ 26; Opposition at 33.

- **In this case, W&C represents Headfirst Baseball LLC, a real limited liability company properly organized under District of Columbia law and owned by Brendan and Ted Sullivan; Headfirst Camps LLC, a real limited liability company properly organized under District of Columbia law and owned by Brendan Sullivan; and Brendan Sullivan.** *See, e.g.*, ECF No. 5 ¶¶ 5-7; Opposition Exs. 23, 30, 32.

8. On these facts, the Court identified two perspectives about potential conflict-of-interests problems for the law firm:

   a. Because of the unanimous consent provision and because the law firm concurrently represented both the partnership and the two-partner group in the dispute, there was a potential conflict between the partnership and the two-partner group. If it was in the interests of the partnership to produce the partnership records to the single partner and if the two-partner group objected to that production, there would be a conflict.

      - **W&C does not represent a "Headfirst Partnership" in this case or in any other respect.** *See, e.g.*, Sorensen Decl. ¶ 6; Mr. Sullivan Decl. ¶ 8; Sullivan Decl. ¶ 26; Opposition at 33; ECF No. 5.

      - **There is no conflict between any of the parties to this case represented by W&C. Elwood stole from W&C's two entity clients—Headfirst Baseball LLC and Headfirst Camps LLC. In their attempt to remedy Elwood's years of thievery, their interests are completely aligned with the interests of W&C's third client, Brendan Sullivan.** *See, e.g.*, ECF No. 5 ¶¶ 1-2; *see also* D.C. Rules of Professional Conduct 1.7, 1.13.

   c. Another way to look at the same problem, said the Court, was that a deadlocked partnership cannot make a decision and a law firm representing the partnership cannot identify the partnership's interests.

      - **There is no "Headfirst Partnership."** *See, e.g.*, Exs. 71 ("0%"), 72 ("correct"); Opposition at 13-19, 31-33; Surreply at 2-3; Sullivan Decl. ¶¶ 27-30, 41; Sorensen Decl. ¶ 4.

      - **Elwood stole from W&C's two entity clients—Headfirst Baseball LLC and Headfirst Camps LLC. These entities are not deadlocked. They have decided that it is in their interests to remedy Elwood's years of thievery, and that interest is completely aligned with the interests of W&C's third client, Brendan**

7

**Sullivan.**  *See, e.g.*, ECF No. 5 ¶¶ 1-2; *see also* D.C. Rules of Professional Conduct 1.7, 1.13.

In sum, W&C does not have a conflict of interests in this case—not under *Griva* and not under any other source of law.  There is no "Headfirst Partnership."  If Plaintiffs had the burden to disprove the existence of a "Headfirst Partnership," we have carried that burden.  By contrast, Defendants have not carried their burden to prove by clear and convincing evidence either the existence of such a partnership or a basis to disqualify W&C.  W&C never represented a "Headfirst Partnership."  W&C never represented Elwood.  W&C faces no conflict among its three clients in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion To Disqualify Williams & Connolly as Plaintiffs' Counsel.

Dated:  October 21, 2013

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

/s/ Michael S. Sundermeyer
Michael S. Sundermeyer (DC Bar #931873)
Robert M. Cary (DC Bar #431815)
Simon A. Latcovich (DC Bar #980319)
725 12th Street, N.W.
Washington, DC  20005
(202) 434-5000

*Attorneys for Plaintiffs
Headfirst Camps LLC, Headfirst Baseball LLC, and Brendan V. Sullivan III*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2013, a copy of this filing was delivered via ECF on the following:

J. Douglas Baldridge
Caroline P. Gately
Moxila A. Upadhyaya
VENABLE LLP
575 7th Street, NW
Washington DC 20004

*Counsel for Robert and Stacey Elwood*

Thomas J. Ward
Daniel S. Ward
WARD & WARD, P.L.L.C.
2020 N Street, NW
Washington D.C. 20036

*Counsel for Headfirst Professional Sports Camps LLC*

/s/ Michael S. Sundermeyer
Michael S. Sundermeyer