# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                                    )
HEADFIRST BASEBALL LLC, <u>et al.</u>,                )
                                                    )
      Plaintiffs,                              )
                                                    )
  v.                                              )
                                                    )
ROBERT ELWOOD, <u>et al.</u>,                         )
                                                    )
      Defendants.                            )
—————————————————————————)
                                                    )    Civil Action No. 13-536 (RBW)
ROBERT ELWOOD,                                      )
                                                    )
      Counterclaim Plaintiff,                )
                                                    )
  v.                                              )
                                                    )
BRENDAN V. SULLIVAN III, and                        )
HEADFIRST PROFESSIONAL SPORTS                       )
CAMP, LLC,                                          )
                                                    )
      Counterclaim Defendants.               )
—————————————————————————)

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Headfirst Baseball LLC, Headfirst Camps LLC ("the companies"), and

Brendan V. Sullivan III ("Sullivan"), have filed this action against the defendants, Robert

Elwood ("Elwood") and his wife Stacey Elwood, alleging (1) conversion; (2) breach of fiduciary

duty; (3) fraud in the inducement; and (4) tortious interference, and seeking (5) a declaration of a

constructive trust.  <u>See</u> First Amended Complaint ("First Am. Compl.") ¶¶ 206-28.  Defendant

Robert Elwood has filed a counterclaim against Sullivan and a third company, Headfirst

Professional Sports Camps, LLC, alleging (1) breach of contract; (2) violations of the District of

Columbia Uniform Limited Liability Company Act; (3) promissory estoppel; (4) breach of

fiduciary duty; and (5) defamation, and seeking (6) a declaration that Robert Elwood has a partnership interest in an alleged "Headfirst Partnership"; (7) an accounting and compelled purchase of Elwood's partnership interest in the alleged Headfirst Partnership; and (8) punitive damages. See Counterclaim Against Brendan V. Sullivan III and Headfirst Professional Sports Camps LLC ("Countercl.") ¶¶ 85-141. Currently before the Court are the Plaintiffs' Motion for Leave to File Second Amended Complaint ("Pls.' Mot."), and the Elwoods' Motion to Disqualify Williams & Connolly LLP as Plaintiffs' Counsel and Memorandum in Support ("Defs.' Mem.") of their disqualification motion. After carefully considering the parties' submissions[1] and their oral arguments presented to the Court on October 24, 2013, the Court concludes for the following reasons that it must grant the plaintiffs' motion to amend their complaint, and deny without prejudice the defendants' motion to disqualify Williams & Connolly as plaintiffs' counsel.

## I. BACKGROUND

All of the claims and counterclaims in this case arise out of the soured business and personal relationships of Brendan Sullivan III and Robert Elwood. The plaintiff companies, who along with Sullivan have brought this action, provide athletic summer camp programs for several thousand children, First Am. Compl. ¶ 12; Countercl. ¶ 6, and the counterclaim defendant company, Headfirst Professional Sports Camps LLC, "is the official provider of summer [youth] camps for the Washington Nationals, Boston Red Sox, Chicago Cubs and New York Yankees in

---

[1] In addition to those already identified, the Court considered the following filings by the parties in reaching its decision: (1) the Plaintiffs' Response to Defendants' Motion to Disqualify Williams & Connolly LLP as Plaintiffs' Counsel ("Pls.' Opp'n"); (2) the defendants' Reply to Response to Motion to Disqualify Williams & Connolly LLP as Plaintiffs' Counsel ("Defs.' Reply"); (3) the defendants' Supplemental Memorandum in Support of Elwoods' Motion to Disqualify Williams & Connolly LLP as Plaintiffs' Counsel ("Defs.' Supp. Mem."); (4) the Plaintiffs' Response to Supplemental Memorandum in Support of Elwoods' Motion to Disqualify Williams & Connolly LLP as Plaintiffs' Counsel, Based on Newly Discovered, Dispositive Evidence ("Pls.' Supp. Resp."); (5) the defendants' Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint ("Defs.' Opp'n"); and (6) the Plaintiffs' Reply in Support of Motion for Leave to File Second Amended Complaint ("Pls.' Reply").

the District of Columbia, Boston, Chicago, and New York Metropolitan areas," Countercl. ¶ 24, at which "[c]ampers ages 5-13 enjoy a 'Major League Experience' with first-rate coaching, VIP tours and the opportunity to meet a[] [Major League Baseball] player," Countercl., Exhibit ("Ex.") E (Screenshot of Headfirst Website) at 4.  The plaintiffs' first amended complaint asserts that Sullivan is the "founder and President of Headfirst," while Elwood was the "'second in command' of the business under Sullivan."  First Am. Compl. ¶ 13.   The plaintiffs allege that it was discovered in 2012 that Robert Elwood had misappropriated hundreds of thousands of dollars from the plaintiff companies over several years, First Am. Compl. ¶¶ 1, 14, and that Stacey Elwood participated in the misappropriation, as well as its cover-up, id. ¶ 2.  "As a result, on December 28, 2012, Sullivan advised Elwood in writing that" his position with the plaintiff companies "was terminated effective December 31, 2012."  Id. ¶ 202.

The defendants present a markedly different story, alleging that Elwood is a partner who co-owns the "Headfirst Partnership."  Countercl. ¶¶ 6, 22.  The counterclaim alleges that the Headfirst companies have been operating under the umbrella of a de-facto partnership—one that Elwood helped develop and in which he has now been wrongfully denied participation.  Countercl. ¶¶ 1-2, 34-36.  According to the counterclaim, "the Headfirst Partnership was formed" in 2001 when "Elwood and Sullivan began, as co-owners," managing the "Headfirst business as a whole."  Id. ¶ 22.  Elwood further alleges that Sullivan "authorized, was a participant in, and was the architect of the very conduct [Sullivan] now alleges is wrongful."  Id. ¶ 36.

One week after filing their counterclaim, the defendants filed the motion to disqualify Williams & Connolly as plaintiffs' counsel in this case.  The defendants allege that Elwood and Sullivan sought and obtained legal advice from Sullivan's father, Brendan V. Sullivan, Jr., and

the law firm at which the elder Sullivan is a partner, Williams & Connolly.  See Defs.' Mem. at

3-4; see also Defs.' Mem., Ex. 1 (Declaration of Robert Elwood ("Elwood July Decl.")) ¶¶ 9, 20.

The defendants allege further that Williams & Connolly "became general counsel to Headfirst,"

and that "Elwood and Sullivan also received legal advice from Williams & Connolly on personal

issues."  Defs.' Mem. at 4; see also Defs.' Mem., Ex. 1 (Elwood July Decl.) ¶ 9.  In addition to

the elder Sullivan, the defendants represent that Stephen Sorenson, a former Williams &

Connolly partner, also provided advice "on a variety of issues, some of which are central to the

dispute in this lawsuit."  Defs.' Mem. at 4; id., Ex. 1 (Elwood July Decl.) ¶¶ 10-18.  The

plaintiffs oppose the defendants' motion to disqualify Williams & Connolly.

    The plaintiffs also recently filed a motion for leave to file a second amended complaint to

include further allegations concerning their tortious interference claim, as well as to add a claim

under the Stored Communications Act, 18 U.S.C. §§ 2701-2712 (2012).  Pls.' Mot. at 4.  The

defendants oppose the motion on the ground that the proposed amendments are futile.  Defs.'

Opp'n at 1.

## II.  STANDARDS OF REVIEW

### A.    Motion to Disqualify Counsel

    Although "[i]t is true of course that disqualification of an attorney is a matter which rests

within the sound discretion of the trial court," it is also true that "[d]isqualification of an attorney

is a serious step."  Derrickson v. Derrickson, 541 A.2d 149, 152 & n.6 (D.C. 1988); see also

Grouper v. Taff, 717 F.2d 1415, 1418 (D.C. Cir. 1983).  This is because "[d]isqualification may

severely affect the monetary interest and reputation of an attorney," and also "negates a client's

right to freely choose his counsel."  Derrickson, 541 A.2d at 152 n.6 (citation omitted).

In addressing a motion to disqualify, a court "'must consider two questions in turn: first, whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and if so, whether such violation provides sufficient grounds for disqualification.'"  In re Rail Freight Fuel Surcharge Antitrust Litig., __ F. Supp. 2d __, __, 2013 WL 4714334, at *5 (D.D.C. 2013) (citation omitted).  "Any motion to disqualify faces the extraordinarily high burden articulated by the . . . [Circuit] in Koller v. Richardson, Merrell Inc., 737 F.2d 1038, 1056 (D.C. Cir. 1984), vacated on other grounds, 472 U.S. 424 (1985)," in which the Circuit concluded that "unless the attorney's conduct will tend to taint the trial and actually have the potential to affect its outcome, disqualification is impermissible."  Cauderlier & Assocs., Inc. v. Zambrana, No. 05-1653, 2006 WL 3445493, at *2 (D.D.C. Oct. 6, 2006).  As the Circuit stated:

> [D]isqualification is warranted only rarely in cases where there is neither a serious question as to counsel's ability to act as a zealous and effective advocate for the client, nor a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party, or prior responsibility as a government official.  Except in cases of truly egregious misconduct likely to infect future proceedings, other means less prejudicial to the client's interest than disqualifying the counsel of [his or her] choice are ordinarily available to deal with ethical improprieties by counsel.

Koller, 737 F.2d at 1056 (citations omitted).

## B.     Motion to Amend

"A party may amend its pleading once as a matter of course" before the adverse party has filed a responsive pleading.  Fed. R. Civ. P. 15(a).  However, after a responsive pleading has been filed, the initial pleading may be amended "only with the opposing party's written consent or the court's leave."  Id. 15(a)(2).  While the Court has sole discretion to grant or deny leave to amend, "[l]eave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing Foman v. Davis, 371

U.S. 178, 182 (1962)).  The rationale for this perspective is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  <u>Foman</u>, 371 U.S. at 182.

### III.  LEGAL ANALYSIS

**A.      The Defendants' Motion to Disqualify**

The defendants ask the Court to disqualify Williams & Connolly as plaintiffs' counsel in this case on the grounds that the law firm's continued involvement would violate three District of Columbia Rules of Professional Conduct:  Rule 1.7, Rule 1.9, and Rule 3.7.  Defs.' Mem. at 3. The Court will address each potential basis for disqualification in turn.

**1.      Whether Plaintiffs' Counsel's Representation Violates Rule 1.7**

Rule 1.7 states:

(b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
    (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;
        . . . .
(c) A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if
    (1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and
    (2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

D.C. R. Prof'l Conduct 1.7.  The language in Rule 1.7(b) prohibits a lawyer's representation of one client in a matter where that client's position "is adverse to a position taken or to be taken <u>by another client in the same matter</u>," D.C. R. Prof'l Conduct 1.7(b)(1) (emphasis added).  Unlike, for example, Rule 1.9, which specifically refers to lawyers who have "formerly represented a

client," Rule 1.7 limits the conflicts to those existing between two parties that are <u>currently</u> clients of a lawyer.

The comments to Rule 1.7 similarly focus on a lawyer's relationship with current clients:

The difference between Rule 1.7(a) and Rule 1.7(b) is that in the former, the lawyer is representing multiple interests in the same matter, while in the latter, the lawyer is representing a single interest, but a client of the lawyer who is represented by different counsel has an interest adverse to that advanced by the lawyer.

D.C. R. Prof'l Conduct 1.7, cmt. 1. Indeed, other members of this Court have made the same distinction. <u>See</u> <u>Armenian Genocide Museum & Mem'l, Inc. v. Cafesjian Family Found., Inc.</u>, 691 F. Supp. 2d 132, 156-58 (D.D.C. 2010) (characterizing Rule 1.7 as "govern[ing] conflicts of interest among <u>current</u> clients" and observing that "[t]he duty owed a former client is not the same as a duty owed a current client" (emphasis in original)); <u>In re Rail Freight</u>, __ F. Supp. 2d at __, 2013 WL 4714334, at * 5 ("When considering whether an attorney may represent a client in a way that is adverse to the interests of another client, the District of Columbia Rules of Professional Conduct distinguish between the duties owed to a firm's current clients and those owed to former clients." (comparing Rules 1.7 and 1.9)). Importantly, "[t]he nature of the attorney-client relationship at the time the conflict arose governs the applicable standard, regardless of the status of that relationship at the time of the disqualification motion." <u>In re Rail Freight</u>, __ F. Supp. 2d at __, 2013 WL 4714334, at * 5 (citations omitted).

Here, the plaintiffs have provided evidence that Elwood conceded that Williams & Connolly is not currently his counsel, and that he did so prior to the filing of this case. <u>See</u> Pls.' Opp'n, Ex. 8 (Dec. 3, 2012 Letter from Stephen P. Sorenson to Robert Elwood Re: Promissory Note to Headfirst Camps, LLC) at 1-2 (bearing Elwood's signature following the statement, among others, that "Williams & Connolly LLP does not serve as your counsel in connection with

such Promissory Note or for any other matter"). Moreover, the law firm of Venable LLP is currently representing the defendants in this litigation—not Williams & Connolly.

The defendants, however, argue that Williams & Connolly is the general counsel for both the Headfirst Partnership and the Headfirst Professional Sports Camps LLC, and that the law firm is thus prohibited from representing the constituent members or owners of those organizations in any lawsuit against any other members or owners. Defs.' Mem. at 9-13. To be sure, law firms are prohibited from representing some constituents of a business entity in disputes against other constituents in certain circumstances. See, e.g., Griva v. Davidson, 637 A.2d 830 (D.C. 1994). In Griva, for example, a law firm represented both a partnership and two of the three siblings who comprised the partnership in a lawsuit against the third sibling partner. Id. at 832-35. There was no question concerning which parties the law firm represented or about whether the law firm represented both the partnership and two of its partners when the dispute arose between the three partners. Id. Rather, as relevant to this case, the court in Griva framed the question as follows: "[W]hen a law firm that represents a three-member partnership also represents two of the individual partners in matters that pertain to the partnership, may the third partner obtain . . . disqualification of the law firm from representing the partnership?" Id. at 832. In analyzing that question, the District of Columbia Court of Appeals relied heavily on "the fact that the partnership agreement contain[ed] a unanimous consent provision." Id. at 833. The court noted in a footnote that "[b]y virtue of the partnership veto provision and the resulting tendency of the partnership to deadlock, the law firm—trying to represent both the entity. . . and two of its constituents . . . —cannot tell what positions on partnership issues reflect the partnership's true interest." Id. at 840 n.10. Ultimately, the court held that "a law firm ethically can represent a partnership and one or more of its individual partners at the same time—

including representation as to matters affecting the partnership—except when such dual or multiple representation would result in an 'actual conflict of positions.'" Id. at 844. But the court declined to decide whether the law firm's representation violated the Rules of Professional Conduct, and instead found that "[g]enuine issues of material fact must be resolved at trial" prior to reaching the question of whether any Rules had been violated. Id. at 848.

Here, the plaintiffs have presented proof that Elwood is not a member of either of the plaintiff companies represented by Williams & Connolly, see Pls.' Opp'n, Ex. 23 (Headfirst Baseball, L.L.C. Operating Agreement) at 1 (listing Brendan V. Sullivan, III and Sean C. Flikke as the only two members); see also Countercl. ¶ 10 (stating that Sullivan "purports to be the sole owner of Headfirst Camps"). And while Elwood is a member of Headfirst Professional Sports Camps LLC, see Countercl. ¶ 9, that company is represented by the law firm of Ward & Ward, PLLC, not Williams & Connolly. Finally, although the defendants base their counterclaim and defense on the existence of a Headfirst Partnership of which Robert Elwood is allegedly one of the partners, which the defendants allege was represented by Williams & Connolly, there is no other evidence aside from the defendants' own assertions that Williams & Connolly ever represented such a partnership. Indeed, these assertions are contested by the plaintiffs. Pls.' Opp'n at 29.

Even with the more fully developed factual record in Griva, and even given the undisputed existence of the partnership in that case, the District of Columbia Court of Appeals could not "decide as a matter of law on [that] record whether [the law firm] violated the Code of Professional Responsibility or the Rules of Professional Conduct," but rather found that "[g]enuine issues of material fact must be resolved at trial before the question whether these were such violations can be answered." 637 A.2d at 848. The court thus remanded the case to

the trial court for further proceedings.  The court did note that, "in the event such violations are proved, there is precedent for their serving as the basis for civil liability."  Id.

Unlike Griva, which addressed cross motions for summary judgment, this case is far from having reached that procedural stage.  Aside from the lack of evidence concerning the existence of the Headfirst Partnership upon which the defendants' disqualification argument relies, and whether Williams & Connolly represented that partnership, there are many other issues of fact that remain to be resolved.  The scant nature of the existing factual record does not square with the high burden the defendants must satisfy to disqualify the plaintiffs' counsel of choice.  While discovery and further development of the facts in this case might ultimately support a finding of a Rule 1.7 violation, the defendants may not rely on that Rule as a basis for disqualifying Williams & Connolly as plaintiffs' counsel in this case at this time.  The Court must therefore deny the defendants' Rule 1.7 challenge without prejudice.  If evidence later comes to light that would counsel in favor of disqualification, the defendants may re-file their motion.

### 2.       Whether Plaintiffs' Counsel's Representation Violates Rule 1.9

The defendants argue next that Williams & Connolly formerly represented Elwood concerning matters[2] substantially related to this lawsuit, and thus Rule 1.9 prohibits the law firm from providing representation to the plaintiffs in this case.  Defs.' Mem. at 13.

Rule 1.9 states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

---

[2] A "matter" is defined by the D.C. Rules of Professional Conduct as "any litigation, . . . the drafting of a contract, a negotiation, estate or family relations practice issue, or any other representation, except as explicitly limited in a particular rule."  D.C. R. Prof'l Conduct 1.0(h).

D.C. R. Prof'l Conduct 1.9.  In order to establish a violation of Rule 1.9, the party seeking

disqualification must satisfy three prerequisites:

> (1) "the attorney accused of the violation is a 'former attorney' with respect to a
> party presently before the court," (2) "the subject matter of the former
> representation is the same as, or substantially related to, the present matter on
> which the alleged violation of Rule 1.9 is based," and (3) "the interests of the
> former client are adverse to the interests of the party represented by the attorney
> who is accused of violating Rule 1.9."

GEO Specialty Chems., Inc. v. Husisian, __ F. Supp. 2d __, __, 2013 WL 3216041, at *8

(D.D.C. 2013) (citation omitted).  The comments to Rule 1.9 further elaborate:

> Matters are "substantially related" for purposes of this rule if they involved the
> same transaction or legal dispute or if there otherwise is a substantial risk that
> confidential factual information as would normally have been obtained in the
> prior representation would materially advance the client's position in the
> subsequent matter.

D.C. R. Prof'l Conduct 1.9, cmt. 3.  The comments to Rule 1.9 also indicate that the Rule "is

intended to incorporate District of Columbia and federal case law defining the 'substantial

relationship' test," including Brown v. District of Columbia Board of Zoning, 486 A.2d 37 (D.C.

1984) and its progeny.  Under that line of cases, the party seeking disqualification bears the

burden of persuading the Court of two points.  First, "the party must show that the attorney-client

relationship formerly existed," and "[s]econd, the party must show that the current litigation is

substantially related to the prior representation."  Derrickson, 541 A.2d at 151-52; see also Paul

v. Judicial Watch, Inc., 571 F. Supp. 2d 17, 23 (D.D.C. 2008) (citing In re Am. Airlines, 972

F.2d 605, 614 (5th Cir. 1992)).

### a.      Whether an Attorney-Client Relationship Formerly Existed

An attorney-client relationship is formed when a client and an attorney "explicitly or by

their conduct, manifest an intention to create the attorney/client relationship."  In re Ryan, 670

A.2d 375, 379 (D.C. 1996) (quotation marks omitted); see also Restatement (Third) of the Law

Governing Lawyers § 14 ("A relationship of client and lawyer arises when a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either (a) the lawyer manifests to the person consent to do so; or (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services . . . ."). In determining whether an attorney-client relationship exists, courts have considered factors such as (1) the character or nature of the information allegedly shared with the attorney; (2) the passage of time between the alleged former representation and the current litigation; (3) the payment of fees; and (4) the existence of a formal agreement. Derrickson, 541 A.2d at 153; see also Teltschik v. Williams & Jensen, PLLC, 683 F. Supp. 2d 33, 45 (D.D.C. 2010) (listing the following factors for consideration: "whether the client perceived that an attorney-client relationship existed, whether the client sought professional advice or assistance from the attorney, whether the attorney took action on behalf of the client, and whether the attorney represented the client in proceedings or otherwise held herself out as the client's attorney"). The District of Columbia Court of Appeals has stressed that "neither a formal agreement nor the payment of fees is necessary to create an attorney-client relationship." Derrickson, 541 A.2d at 153 (citation omitted); see also Restatement (Third) of the Law Governing Lawyers § 14, cmt. c (same).

Here, the defendants state the following about Elwood's alleged attorney-client relationship with Williams & Connolly:

- "Stephen Sorenson[, a former partner at Williams & Connolly,] often provided counsel to [Sullivan] and me on business and personal issues." Defs.' Mem., Ex. 1 (Elwood July Decl.) ¶ 10.
- "In addition to fatherly advice on a variety of personal issues, [Brendan Sullivan, Jr., the plaintiff's father,] has provided legal advice to me on my rights in Headfirst and on personal estate planning issues." Id., Ex. 1 (Elwood July Decl.) ¶ 20.

Despite Elwood's representations, the plaintiffs argue strenuously that there was no attorney-client relationship between Williams & Connolly and Elwood. Pls.' Opp'n at 35-42; see also id., Exs. 1 (Declaration of Brendan V. Sullivan III) ¶¶ 36-38 ("Regarding matters in which [Williams & Connolly] represented me or an LLC, I do not believe that [Williams & Connolly] communicated with Elwood without my explicit direction or authorization."), 2 (Declaration of Stephen P. Sorenson) ¶¶ 5, 10 ("I never represented Elwood in any capacity. In fact, I told Elwood that I was not his lawyer. . . . I communicated with Elwood only as authorized by Sullivan."), 3 (Declaration of Brendan V. Sullivan, Jr.) ¶ 3 ("I have not provided 'legal advice to Elwood on his rights in Headfirst.' I never had a conversation of any kind with him about his effort to acquire equity in my son Brendan's companies or about my son Ted's ownership interest in Headfirst Baseball LLC.").

Neither party has presented emails or other documentation affirmatively establishing whether an attorney-client relationship between Elwood and Williams & Connolly existed. Moreover, there are no allegations of a formal agreement, payment of attorneys' fees, or conversations in which either party made explicit statements about the nature of the alleged relationship prior to the December 3, 2012 letter referenced earlier, that was signed by Elwood and wherein Sorenson told Elwood that Williams & Connolly was not his attorney. Instead, the evidence in the record before the Court concerning the existence or non-existence of a former attorney-client relationship consists almost exclusively of declarations made by Elwood, Sullivan, and Williams & Connolly attorneys. And the declarations and their content that support the existence of the relationship provide far less than what other courts have accepted as evidence establishing an attorney-client relationship. Teltschik, 683 F. Supp. 2d at 46 (D.D.C. 2010) (finding that a reasonable jury could conclude that an attorney-client relationship existed

where the plaintiff provided the court with evidence of "letters of attorney designation," third parties addressed legal correspondence intended for the plaintiff to the attorney, and the attorney "received, read, and responded to [the] correspondence"); In re Bernstein, 707 A.2d 371, 375 (D.C. 1998) (finding "substantial evidence" of an attorney-client relationship where record showed that an attorney had contacted a third party on behalf of the alleged clients, threatened to sue the company, and the client repeatedly "contact[e]d [the attorney] about the case and" later sent the attorney a discharge letter). The defendants here have failed to present facts sufficient to persuade the Court that an attorney-client relationship ever existed.

### b.    Whether the Matters are Substantially Related

Even if the Court could find that an attorney-client relationship existed, it is not clear from the existing record that the prior representation and the current litigation are substantially related. "'Where any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.'" Derrickson, 541 A.2d at 151 (citation omitted). To determine whether two matters are "substantially related," courts look to "both the facts and the legal issues involved." Brown, 486 A.2d at 49 (D.C. 1984). In doing so, courts engage in a three-step analysis. The court must first "'make a factual reconstruction of the scope of the prior legal representation.'" Id. (citation omitted). Second, "[i]f the factual contexts overlap, the court then has to determine 'whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those [prior] matters.'" Id. (citation omitted). Third, "if such information apparently was available to counsel in the prior representation, the court has to determine whether it 'is relevant to the issues raised in the litigation pending against the former client.'" Id. (citation omitted).

The relevance to the new representation of the information obtained in the prior representation is alone insufficient to warrant disqualification where the matters are not actually the same transaction or legal dispute. See D.C. R. Prof'l Conduct 1.9, cmt. 3. Rather, there must be a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Id.; see also Restatement (Third) of the Law Governing Lawyers § 132, cmt. d(iii) (explaining that the subsequent representation must carry a "substantial risk that the subsequent representation will involve the use of confidential information of the former client obtained in the course of the representation in violation of" the lawyer's duty to safeguard that confidential information). Although the D.C. Rules of Professional Conduct do not define "confidential information," that term is defined in the Restatement as "information relating to representation of a client, other than information that is generally known." Id. § 59. The comments to Rule 1.9 also state that "information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying." D.C. R. Prof'l Conduct 1.9, cmt. 3. As to the "substantial risk" requirement, while neither the Rules nor the Restatement specifically define that term, the Restatement indicates that such risk "exists where it is reasonable to conclude that it would materially advance the client's position in the subsequent matter to use confidential information obtained in the prior representation." Restatement (Third) of the Law Governing Lawyers § 132, cmt. d(iii).

"A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter," D.C. R. Prof'l Conduct 1.9, cmt. 3, nor should a court "require proof that an attorney actually had access to or received privileged information while representing a

client in a prior case,'" <u>Derrickson</u>, 541 A.2d at 151 (citation omitted). Rather, a court may draw "conclusion[s] about the possession of such information . . . based on the nature of the services the lawyer provided the former client and the information that would in ordinary practice be learned by a lawyer providing such services." D.C. R. Prof'l Conduct 1.9, cmt. 3. However, the "plaintiff still must plead facts showing that information from the first matter 'might be useful in the second.'" <u>GEO Special Chems., Inc.</u>, __ F. Supp. 2d at __, 2013 WL 3216041, at *10.

As to the factual scope of the prior representation, here the defendants allege that two Williams & Connolly partners, Stephen Sorenson and Brendan V. Sullivan, Jr., provided legal advice concerning the following:

- "[D]ocumenting [Elwood's] one-half interest in the Headfirst business, as part of [his] estate planning efforts." Defs.' Mem., Ex. 1 (Elwood July Decl.) ¶ 11.
- The formation of Headfirst Professional Sports Camp LLC. <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 12.
- "[L]egal strategies for avoiding Ted Sullivan's potential claims to a percentage of Headfirst." <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 14.
- "[T]ax implications to [Elwood] of transferring Ted Sullivan's interest in Headfirst Baseball LLC to [Elwood]." <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 14.
- Advice concerning "whether Ted Sullivan could succeed in claiming a right to proceeds of the [potential] sale" of Headfirst to another company. <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 16.
- "[C]ertain tax practices related to Headfirst employees . . . ." <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 18.
- Elwood's "rights in Headfirst." <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 20.
- "[P]ersonal estate planning issues." <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 20.
- "[O]btain[ing] 'key man' life insurance . . . to protect Headfirst in the event of [Elwood's] premature death and as part of a succession plan for the business in that event." <u>Id.</u>, Ex. 1 (Elwood July Decl.) ¶ 20.

<u>See also</u> Defs.' Mem. at 15-16. As support that these events occurred, the defendants present only Elwood's July 2013 declaration and two emails. <u>See id.</u>, Ex. 1 (Elwood July Decl.), Ex. A (November 2010 Email Correspondence Between Sorenson and Sullivan); Defs.' Supp. Mem., Ex. A (October 2007 Email Correspondence Between Elwood and Sullivan). Neither email definitively establishes that any Williams & Connolly attorney provided legal representation to

Elwood.  However, the defendants further allege that "[s]ome statements in" Elwood's July 2013

declaration "are based on documents that [he had] personally seen before [he] was wrongfully

excluded from the Headfirst business" that Elwood believes to be in the possession of Sullivan,

Headfirst, and Williams & Connolly.  Defs.' Reply, Ex. 1 (Declaration of Robert Elwood Dated

August 15, 2013 ("Elwood Aug. Decl.")) ¶ 9.

While the plaintiffs do not concede the existence of an attorney-client relationship

between Williams & Connolly and Elwood, they argue that if the law firm did represent him,

then the representation was not substantially related to the current lawsuit.  Pls.' Opp'n at 35-42.

In particular, they state that any representation and interaction with Elwood would have been

limited to the following situations:

> First, [Williams & Connolly] acted as Sullivan's scrivener for LLC operating
> agreements that had been negotiated by Sullivan without [Williams & Connolly's]
> involvement; second, [Williams & Connolly] advised Sullivan in his role as
> manager of an LLC or Sullivan authorized Elwood to obtain such advice; and
> third, [Williams & Connolly] advised Sullivan throughout his negotiations with
> Elwood over Elwood's requests for ownership in Baseball LLC or Camps LLC.

Id. at 39-40.  Because it is undisputed that any alleged prior representation somehow involved

the plaintiff companies in this lawsuit, there is inevitably some level of factual overlap.

However, the degree of the overlap depends on the veracity of the statements the parties convey

in the various declarations they have submitted to the Court.  And, while Elwood states that

Williams & Connolly attorneys provided advice to him about his ownership interests in the

plaintiff companies, the plaintiffs' unsurprisingly counter that Williams & Connolly provided

him no such advice.

Even assuming there is a sufficient factual overlap to satisfy Brown, 486 A.2d at 49, the

Court must still consider the remaining two components of Brown, id.; namely, (1) whether it is

reasonable to infer that the confidential information allegedly provided would have been given to

a lawyer representing a client in the prior matters, and (2) whether the information obtained in the prior representation is relevant to the issues raised in the new litigation pending against the former client, id. Admittedly, if Williams & Connolly partners advised Elwood in the manner he alleges, see generally Defs.' Mem., Ex. 1 (Elwood July Decl.), it seems reasonable to infer that he would have provided some information to Williams & Connolly that is relevant to this litigation.

What is not apparent from the existing record or the defendants' allegations is whether any of the information that Elwood provided to Williams & Connolly was either confidential or would materially advance the plaintiffs' position in this litigation. When asked to clarify this point during the oral argument on this motion, defense counsel stated that confidential information was undoubtedly provided to Williams & Connolly; that the advantage to the plaintiffs and disadvantage to the defendants are unclear; and that the defendants are unsure what Williams & Connolly might know. These vague allegations are insufficient. Given the lack of evidence, and bearing in mind that the defendants have the heavy burden of persuading the Court that the alleged prior representation is substantially related to the present litigation, Derrickson, 541 A.2d at 151-52, it would be inappropriate on this record to find that Rule 1.9 has been violated and to disqualify Williams & Connolly as the plaintiffs' counsel on that basis at this time. To be sure, "there is authority for the proposition that in a disqualification situation, any doubt is to be resolved in favor of disqualification." Id. (quotation marks and citation omitted). But the plaintiffs have failed to come forward with factual assertions and evidence sufficient to form the basis of a disqualification ruling, and the Court must therefore deny the defendants' Rule 1.9 challenge. See, e.g., In re Penning, 930 A.2d 144, 155 (D.C. 2007) ("Like any exercise of discretion, . . . a court's ruling either way [on a motion to disqualify counsel] must rest on

'valid reasons' and a 'specific factual predicate.'").  However, the Court denies the motion

without prejudice.  It is not inconceivable that discovery will provide the defendants with

evidence that would establish the existence of the prior representation, as well as whether it is

substantially related to the current litigation, such that Williams & Connolly's continued

representation of the plaintiffs in this matter would constitute a violation of Rule 1.9.  The

plaintiffs are thus advised that the Court might, upon motion of the defendants, later disqualify

Williams & Connolly.  The plaintiffs should therefore bear in mind that such proceedings will

only delay further the expeditious resolution of this case.

### 3.    Whether Plaintiffs' Counsel's Representation Violates Rule 3.7

Finally, the defendants argue that Williams & Connolly and its attorneys may not "act[]

in the dual role of witness and advocate, even if [their] testimony would be on behalf of the

client."  Defs.' Mem. at 16.

Rule 3.7 states:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be
a necessary witness except where:
    (1) The testimony relates to an uncontested issue;
    (2) The testimony relates to the nature and value of legal services rendered
    in the case; or
    (3) Disqualification of the lawyer would work substantial hardship on the
    client.
(b) A lawyer may not act as advocate in a trial in which another lawyer in the
lawyer's firm is likely to be called as a witness if the other lawyer would be
precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9. . . .

D.C. R. Prof'l Conduct 3.7.  The plain language of Rule 3.7(a) suggests that Stephen Sorenson

and Brendan Sullivan, Jr. are precluded from serving as trial counsel in this case, because the

nature of their involvement in the events preceding this litigation is in dispute.  Indeed, neither

has entered an appearance on behalf of the plaintiffs.  And regardless of whether their testimony

would be consistent with or adverse to the plaintiffs' position, their testimony would "relate[] to

a []contested issue," and the Rule thus states that they "<u>shall</u> not act as advocate."  D.C. R. Prof'l

Conduct 3.7(a) (emphasis added).

However, by the terms of Rule 3.7(b), the defendants' arguments concerning

disqualification of the entire law firm of Williams & Connolly turn on whether the Court first

finds that allowing a particular member of the law firm to serve as counsel would violate either

Rule 1.7 or Rule 1.9.  Because the Court has found that there is insufficient evidence at this time

to find either a Rule 1.7 or Rule 1.9 violation, the Court must decline the demand to disqualify

the law firm of Williams & Connolly as the plaintiffs' counsel at this juncture.  For the same

reasons stated above, the denial of the defendants' disqualification motion based on Rule 3.7 is

without prejudice.

**B.      The Plaintiffs' Motion to Amend**

The plaintiffs seek leave of the Court to file a second amended complaint to include

additional claims of tortious interference, as well as a claim under the Stored Communications

Act, based on Elwood's alleged "unauthorized access to a Google account."  Pls.' Mot. at 2.

Specifically, they allege that Elwood accurately guessed the password to a Google account

owned by the plaintiff companies and subsequently changed the password.  <u>Id.</u> at 2-3.  The

plaintiffs further allege that Elwood changed the alternate email address for the Google account

(i.e., the emergency email address) and the recovery phone number to his own email address and

telephone number.  <u>Id.</u> at 2-5; <u>see also</u> <u>id.</u>, Ex. 2 (Google Account Screenshots).  The defendants

oppose the motion to amend on the grounds that the proposed "amended complaint does not

concern a stored electronic communication."  Defs.' Opp'n at 1-2.

The Stored Communications Act ("Act") provides for a private right of action against

whoever intentionally accesses without authorization a facility through which an
electronic communication service is provided . . . and thereby obtains, alters, or

> prevents authorized access to a wire or electronic communication while it is in electronic storage in such system . . . .

18 U.S.C. § 2701(a).  With exceptions that do not apply in this case, any "person aggrieved by any violation of [the Act] . . . may, in a civil action, recover from the person or entity . . . which engaged in that violation such relief as may be appropriate."  Id. § 2707(a).

Section 2711(a) of the Act adopts the definitions contained in the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2522 (2012), which in turns generally defines an electronic communication as

> any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce . . . .

18 U.S.C. § 2510(12).

The plaintiffs argue that the definition of "electronic communication" encompasses the proposed Second Amended Complaint's allegations about "'reports about webpages' visibility for Google searches' and 'analysis of web-based sales and conversions.'"  Pls.' Reply at 2-3 (citing proposed Second Amended Complaint).  However, the plain language of the Electronic Communications Privacy Act defines "electronic communication" as constituting "any transfer of signs, signals, writings, images, sounds, data or intelligence of any nature."  But even if the defendants are correct that the plaintiffs have not adequately pleaded the existence of a stored communication, at least one other federal court has suggested that the Stored Communications Act "does not require that there be a 'communication' at all" in order for the unauthorized access to information to constitute a violation of the Act.  See In re Intuit Privacy Litig., 138 F. Supp. 2d 1272, 1275-76 (C.D. Cal. 2001); see also Council on American-Islamic Relations Action Network, Inc. v. Gaubatz, 793 F. Supp. 2d 311, 337 (D.D.C. 2011) (citing In re Intuit Privacy

Litigation as support for finding that the plaintiffs' factual allegations were sufficient to survive a motion to dismiss). Considering the wide scope the existing case law has assigned to the term "electronic communication" as used in the Stored Communications Act, and in light of the liberal standard of Federal Rule of Civil Procedure 15, the Court cannot conclude that the plaintiffs' proposed amendments are insufficient as a matter of law. That issue will be left for another day should the defendants move to dismiss the claim.

The defendants do not challenge the filing of the second amended complaint on any other grounds, and so the Court may treat any other arguments that the defendants might make as conceded. See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.), aff'd, 98 F. App'x 8 (D.C. Cir. 2004); cf. Local Civ. R. 7(b) (stating that a court may treat a motion as conceded when an opposition memorandum is not timely filed). Accordingly, the Court will grant the plaintiffs' motion for leave to file a second amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the plaintiffs' motion for leave to file a second amended complaint and denies without prejudice the defendants' motion to disqualify Williams & Connolly as plaintiffs' counsel. The Court reiterates that its basis for denying the defendants' motion to disqualify at this time is the lack of a factual predicate sufficient to warrant taking a step as consequential as disqualification. Should more substantial, later discovered facts point to a different outcome, the defendants may renew their motion.[3]

**SO ORDERED** this 22nd day of November, 2013.

REGGIE B. WALTON
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.