**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
HEADFIRST BASEBALL LLC, <u>et al.</u>,       )
                                          )
              Plaintiffs,                 )
                                          )
      v.                                  )
                                          )
ROBERT ELWOOD and                         )
STACEY ELWOOD,                            )
                                          )
              Defendants.                 )
————————————————————)
ROBERT ELWOOD,                            )
                                          )
              Counterclaim Plaintiff,     )
                                          )
v.                                        )     Civil Action No. 13-536 (RBW)
                                          )
                                          )
BRENDAN V. SULLIVAN III and               )
HEADFIRST PROFESSIONAL SPORTS             )
CAMPS LLC,                                )
                                          )
              Counterclaim Defendants.    )
————————————————————)
HEADFIRST PROFESSIONAL SPORTS,            )
CAMPS LLC,                                )
                                          )
              Counterclaim Plaintiff,     )
                                          )
      v.                                  )
                                          )
ROBERT ELWOOD,                            )
                                          )
              Counterclaim Defendant.     )
————————————————————)

**MEMORANDUM OPINION**

Four motions are currently pending before the Court: (1) Brendan V. Sullivan III's

Motion for Summary Judgment on Counts Three, Four, and Six of Robert Elwood's Amended

Counterclaim ("P'ship Summ. J. Mot."); (2) the Motion to Bifurcate and Try First Partnership Claim and Memorandum in Support ("Bifurcation Mot."); (3) Brendan V. Sullivan III's Motion for Summary Judgment on Count Five, and Sullivan and Headfirst Professional Sports Camps LLC's Joint Motion for Partial Summary Judgment on Counts One and Two, of Robert Elwood's Amended Counterclaim ("Estoppel/Buyout Summ. J. Mot."); and (4) Stacey Elwood's Motion for Summary Judgment as to Count I of the Second Amended Complaint and Memorandum in Support ("Conversion Summ. J. Mot.").  After careful consideration of the parties' submissions,[1] as well as the parties' oral arguments at the January 27, 2016 hearing, and for the reasons that follow, the Court concludes that it must deny summary judgment on the issue of partnership <u>vel non</u>, grant in part and deny in part the motion to bifurcate the trial, grant summary judgment in favor of plaintiff Brendan V. Sullivan III on defendant Robert Elwood's promissory estoppel counterclaim, grant partial summary judgment in favor of plaintiffs Brendan V. Sullivan III and

---

[1]  In addition to these motions, the Court considered the following filings in rendering its decision: (1) Second Amended Complaint ("Second Am. Compl."); (2) Answer to Second Amended Complaint of Sullivan, Headfirst Baseball, and Headfirst Camps, Elwood's Amended Counterclaim, and Jury Demand ("Elwood Countercl. I"); (3) Brendan V. Sullivan III's Answer and Affirmative Defenses to the Amended Counterclaim ("Sullivan Ans."); (4) Headfirst Professional Sports Camps LLC's Answer, Affirmative Defenses, and Counterclaim to the Counterclaim Submitted by Robert Elwood ("Headfirst Professional Sports Camps Countercl."); (5) Answer to Headfirst Professional Sports Camps LLC's Counterclaim, Elwood's Amended Counterclaim, and Jury Demand ("Elwood Countercl. II"); (6) Headfirst Professional Sports Camps LLC's Answer and Affirmative Defenses to the Amended Counterclaim Submitted by Robert Elwood ("Headfirst Professional Sports Camps Ans."); (7) Elwood's Opposition to Sullivan's Motion for Summary Judgment on Defense to Existence of Partnership ("P'ship Opp'n"); (8) Brendan V. Sullivan III's Reply in Support of Motion for Summary Judgment on Counts Three, Four, and Six of Robert Elwood's Amended Counterclaim ("P'ship Reply"); (9) Headfirst Baseball LLC, Headfirst Camps LLC, Brendan V. Sullivan, III, and Headfirst Professional Sports Camps LLC's Consolidated Opposition to the Elwoods' Motion to Birfucate and Try First Partnership Claim ("Bifurcation Opp'n"); (10) Elwoods' Reply to Plaintiffs' Opposition to Motion to Bifurcate and Try First Partnership Claim ("Bifurcation Reply"); (11) Elwood's Opposition to Sullivan's Motion for Summary Judgment on Count Five, [and Sullivan] and Headfirst Professional Sports Camps LLC's [Joint] Motion for [Partial] Summary Judgment on Counts One and Two, of the Amended Counterclaim ("Estoppel/Buyout Opp'n"); (12) Joint Reply of Brendan V. Sullivan, III, and Headfirst Professional Sports Camps LLC in Support of Sullivan's Motion for Summary Judgment on Count Five, and the Joint Motion for Partial Summary Judgment on Counts One and Two, of Robert Elwood's Amended Counterclaim ("Estoppel/Buyout Reply"); (13) Headfirst Baseball LLC and Headfirst Camps LLC's Opposition to Stacey Elwood's Motion for Summary Judgment as to Count I of the Second Amended Complaint ("Conversion Opp'n"); and (14) Stacey Elwood's Reply in Support of Motion for Summary Judgment as to Count I of the Second Amended Complaint ("Conversion Reply").

Headfirst Professional Sports Camps LLC on defendant Robert Elwood's counterclaims to the extent that the counterclaims seek a compelled buyout of defendant Robert Elwood's interests in any Headfirst entity as a remedy, and grant summary judgment in favor of defendant Stacey Elwood on plaintiffs Headfirst Baseball LLC and Headfirst Camps LLC's conversion claim.

## I.     BACKGROUND

### A.     The Various Headfirst Limited Liability Companies ("Headfirst LLCs")

#### 1.     Headfirst Baseball LLC

Plaintiff Brendan V. Sullivan III ("Sullivan") assisted in the formation of Headfirst Baseball LLC ("Headfirst Baseball") under the laws of the District of Columbia in 1997.  P'ship Opp'n, Defendant Robert Elwood's Statement of Material Facts in Response to Brendan V. Sullivan's Statement of Material Facts in Support of His Motion for Summary Judgment on Counts Three, Four, and Six of Elwood's Amended Counterclaim ("P'ship Opp'n Facts") ¶ 2; see also id. ¶ 3.  At that time, plaintiff Sullivan and non-party Sean Flikke ("Flikke") were the only members of Headfirst Baseball and each owned 50% of the company.  Id. ¶ 4.  In 2001, non-party Flikke transferred his interest in Headfirst Baseball to non-party Ted Sullivan, the brother of plaintiff Sullivan.  Id. ¶ 7.

#### 2.     Headfirst Professional Sports Camps LLC

In July 2010, Red Sox Camps LLC was organized under the laws of the District of Columbia.  See id. ¶¶ 18-20.  Plaintiff Sullivan and defendant Robert Elwood[2] "were each 50% owners" of this LLC.  Id. ¶ 20.  "In February 2012, Red Sox Camps LLC changed its name to Headfirst Professional Sports Camps LLC [('Headfirst Professional Sports Camps')]."  Id. ¶ 21.

---

[2]  Defendant Robert Elwood became associated in some capacity with plaintiff Sullivan and the various Headfirst LLCs at issue in this case by no later than 2001.  See, e.g., P'ship Opp'n Facts ¶¶ 6, 9.  The nature of that association is heavily disputed by the parties.  See, e.g., id.

### 3.     Headfirst Camps LLC

Headfirst Camps LLC ("Headfirst Camps") was established in January 2012 under the laws of the District of Columbia.  Id. ¶ 26.  Plaintiff Sullivan and his brother Ted Sullivan each own a 50% interest in the company.  See id. ¶¶ 37-38.

### B.     The Parties' Dispute

Plaintiffs Sullivan, Headfirst Baseball, and Headfirst Camps commenced this action, alleging that Headfirst Baseball and Headfirst Camps terminated their relationship with defendant Robert Elwood after the plaintiffs discovered that he had allegedly misappropriated hundreds of thousands of dollars from Headfirst Baseball and Headfirst Camps over several years, using the money for non-business purposes, i.e., personal expenditures, and that defendant Stacey Elwood was complicit in this conduct.  See Headfirst Baseball LLC v. Elwood, 999 F. Supp. 2d 199, 203-04 (D.D.C. 2013); see also Second Am. Compl. ¶¶ 1-2, 15.  Defendant Robert Elwood insists that the non-business expenditures were permitted because he and plaintiff Sullivan allegedly formed an "overarching" Headfirst partnership, which authorized, inter alia, the use of Headfirst Baseball and Headfirst Camps funds for such expenditures.  P'ship Opp'n at 6, 7.

Defendant Robert Elwood has filed several counterclaims against plaintiff Sullivan, generally seeking a declaration of the existence of the alleged Headfirst partnership, see Elwood Countercl. I ¶¶ 110-17 (count three); see also id. ¶¶ 122-28 (alleging, in count five, that he detrimentally relied upon repeated promises from plaintiff Sullivan that they were equal partners in the Headfirst partnership), as well as damages resulting from being ousted from the alleged partnership, see id. ¶¶ 118-21 (requesting, in count four, a full accounting and compelled buyout of the partnership if it exists); id. ¶¶ 129-35 (claiming, in count six, that if a partnership is found

to exist, then damages have resulted from plaintiff Sullivan's breach of his fiduciary duty as a partner).  He has also counterclaimed against Headfirst Professional Sports Camps for a compelled buyout of his undisputed 50% interest in the company.[3]  Id. ¶¶ 93-109 (counts one and two).

## II.      STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material 'if it might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'"  Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255 (citation omitted).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  Id.  The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

[3]  The Court has previously documented the full extent of the parties' dispute, so what is set forth here is by no means comprehensive.  See October 23, 2014 Order, ECF No. 65; see also Headfirst Baseball, 999 F. Supp. 2d at 203-05.  For example, plaintiff Sullivan also seeks to rescind the operating agreement of Headfirst Professional Sports Camps, on the ground that had plaintiff Sullivan known of defendant Robert Elwood's alleged misappropriations, he would have never formed the company with defendant Robert Elwood.  See Second Am. Compl. ¶¶ 3, 225-32.  But only an abridged recitation of the dispute is necessary to resolve the pending motions.

which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (one ellipsis omitted) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## III.    ANALYSIS

### A.    Summary Judgment On Counts Three, Four, And Six Of Defendant Robert Elwood's Amended Counterclaim

Defendant Robert Elwood's third, fourth, and sixth counterclaims are only viable if his alleged, overarching Headfirst partnership exists. See Elwood Countercl. I ¶¶ 110-21, 129-35. Plaintiff Sullivan contends that defendant Robert Elwood was merely an employee of Headfirst Baseball and Headfirst Camps, see, e.g., P'ship Opp'n Facts ¶ 9, and that as a matter of law there can be no Headfirst partnership because the parties do not dispute that Headfirst Baseball and Headfirst Camps were LLCs, and a finding that an overarching Headfirst partnership existed would effectively convert the LLCs into partnerships, which is prohibited under D.C. Code § 29-602.02(a) (2001), see P'ship Summ. J. Mot. at 11-18. This is not exactly so, however.

Under District of Columbia law, a partnership exists where there is an "association of [two] or more persons to carry on as co-owners of a business for profit . . . , whether or not the

6

persons intend to form a partnership."[4]  D.C. Code § 29-602.02(a); see also Beckman v. Farmer, 579 A.2d 618, 629-30 (D.C. 1990) ("The trial court correctly recognized the central issue as whether the parties, despite the absence of an express partnership agreement, intended to carry on the business as co-owners for profit, and that their intent must be inferred from their conduct and dealings with each other." (citation omitted)).  And "[a] person that receives a share of the profits of a business shall be presumed to be a partner in the business, unless the profits were received in payment," inter alia, "[f]or services as an independent contractor or of wages or other compensation to an employee . . . ."  D.C. Code § 29-602.02(c)(3)(B); see also Beckman, 579 A.2d at 630 ("prima facie evidence of partnership" where relevant documents "clearly provide for profit-sharing").

        The test for the existence of a partnership is an objective one.  Beckman, 579 A.2d at 627 (the objective question is whether the parties intended "to do the acts that in law constitute [a] partnership" (quoting A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership § 2.05(c), at 2:36 (1988) ("Bromberg & Ribstein"))).  "In general, the courts, in determining objective partnership intent, look for the presence or absence of the attributes of co-ownership, including profit and loss sharing, control, and capital contributions."  Id. (quoting Bromberg & Ribstein); see also id. ("The customary attributes of partnership such as profit and loss sharing and joint control of decisionmaking are necessary guidepoints of inquiry, but none is conclusive.").  And where there is "ambiguity" as to whether a partnership exists between two or more persons, "the court must resort to inferences from extrinsic evidence of the parties' conduct and course of dealings to determine their legal relationship inter se."  Id. at 630.  "In these

---

[4]  But "[a]n association formed under a statute other than this chapter . . . shall not be a partnership . . . ."  D.C. Code § 29-602.02(b).  All parties agree that Headfirst Baseball, Headfirst Professional Sports Camps, and Headfirst Camps are all LLCs formed under District of Columbia law.  P'ship Opp'n Facts ¶¶ 2, 19, 26.

circumstances," a party denying the existence of a partnership "bears a heavy burden of justification" in convincing a court that "the issue of partnership vel non could be resolved as a matter of law . . . ." Id.

Here, plaintiff Sullivan has not met his "heavy burden" of demonstrating that "the issue of partnership vel non [can] be resolved as a matter of law . . . ." Id.  In considering the evidence before the Court and drawing all justifiable inferences in the light most favorable to defendant Robert Elwood, as the Court must on a motion for summary judgment, the Court concludes that a reasonable jury could find that a partnership existed between plaintiff Sullivan and defendant Robert Elwood, that does not run afoul of D.C. Code § 29-602.02.

According to defendant Robert Elwood, he and plaintiff Sullivan formed an "overarching" Headfirst partnership no later than 2001, P'ship Opp'n at 6-7, see also P'ship Opp'n, Exhibit ("Ex.") 3 (Deposition of Brendan Vincent Sullivan, III ("Sullivan Dep.")) at 133:2-7 ("Headfirst Baseball and Headfirst Professional Sports Camps are two separate companies.  There are resources that are indeed shared between the two of them.  They both occupy the same headquarters, [and] there are full-time employees that do work for both companies." (emphasis added)); P'ship Opp'n, Ex. 5 (January 2012 Email from Plaintiff Sullivan to Defendant Robert Elwood ("January 2012 Sullivan Email") at Elwood 273632 ("I[,] of course[,] agree that you and I have built this company together[—] no one . . . disputes this for a second or tries to allocate credit anywhere or to anyone else."); P'ship Opp'n, Ex. 28 (February 2007 Email from Plaintiff Sullivan to a Non-Party ("February 2007 Sullivan Email")) at HF-0147580 (copying "partner Rob Elwood" on email), whose business objective was apparently to grow and expand the operations of Headfirst Baseball through, inter alia, contributions from defendant Robert Elwood, see, e.g., P'ship Opp'n Facts ¶ 9; P'ship Opp'n, Ex. 2 (January 2012

Email from Plaintiff Sullivan to Non-Party Brother Sullivan ("January 2012 Sullivan Email")) at

HF-0814077 (suggesting that "Headfirst" was a "fledgling company" in 2001 and thereafter

became a "full-time operation"); see also P'ship Opp'n, Ex. 27 (December 2013 Webpage

Excerpt ("2013 Webpage")) at Elwood 275838-39 ("Rob Elwood and Brendan Sullivan started

Headfirst in 1996 with the vision of providing top-notch sports and summer camp programs for

kids in the Washington, DC area. . . .  In 1996, they founded Headfirst with the idea that every

camper, counselor, coach[,] and family attending Headfirst would take away the lessons and

experiences of having positive energy, maximizing effort, leading, learning, building self-

confidence[,] and most of all[,] having fun."); P'ship Opp'n, Ex. 19 (November 2012 Email from

Defendant Robert Elwood to Plaintiff Sullivan ("November 2012 Defendant Robert Elwood

Email")) at HF-0839988 ("As you have clearly stated for [ten-plus] years, you and I are business

partners.  We treat each other as partners, we refer to each other as partners, and you constantly

tell me you and I are partners. . . .  [W]e have always been able to work together to accomplish

many difficult and challenging . . . feats in building this business from the ground up . . . .");

P'ship Opp'n, Ex. 42 (February 2012 Email Between Non-Parties ("February 2012 Non-Parties'

Email")) at HF-0833781 ("Brendan and Ted Sullivan are the 50/50 owners of the membership

interests of Headfirst Baseball. . . .  The business is now run by [plaintiff Sullivan] and a friend

named Rob Elwood."); P'ship Opp'n, Ex. 30 (September 2011 Email from Plaintiff Sullivan to

Non-Parties ("September 2011 Sullivan Email")) at HF-0846935 (similar); P'ship Opp'n, Ex. 4

(December 2004 Email from Plaintiff Sullivan to Defendant Robert Elwood ("December 2004

Sullivan Email")) at Elwood 271404 ("I truly believe that what we have created with Headfirst

and will continue to build over the next many years has the potential to have an enormous,

irreplaceable impact on our community. . . .  As we build this, there is of course going to be

some butting heads and the like . . . . 2004 saw more of this than ever before, but I have never . . .

take[n] your 'stubborn persistence' . . . as anything other than your desire to make me and

Headfirst better[—]and get us closer to our goals (of changing the entire youth sports landscape

in the capital of the entire world . . . . I have a tremendous amount of respect for your business

acumen and instincts[—]and recognize that they are invaluable to what [we have] created.").

      To accomplish the alleged partnership's business objectives, defendant Robert Elwood

claims that the partnership necessarily had to use Headfirst Baseball, which was already in

existence, as well as any other LLCs that came into existence thereafter. See P'ship Opp'n at 8

("The particular LLCs were merely the vehicles through which the business of their partnership

was carried out."); see also P'ship Opp'n, Ex. 33 (April 2006 Email from Plaintiff Sullivan to a

Non-Party ("April 2006 Sullivan Email")) at HF-0832875 ("Rob and I thought this would be

helpful in terms of showing you how our business breaks down, as we think about how to divide

up the company into different LLC[s] . . . ." (emphasis added)). Defendant Robert Elwood

further claims that by virtue of the partnership, he was entitled to use funds from any Headfirst

LLC for any purpose he deemed appropriate. See P'ship Opp'n at 7. The allegations are

sufficient to prove that the alleged partnership was conceivably a vehicle through which

defendant Robert Elwood made contributions for the purpose of growing and expanding the

operations of Headfirst Baseball,[5] and thus, an overarching Headfirst partnership may reasonably

be inferred without de facto converting the LLCs into partnerships. Although this alleged

---

[5] During the January 27, 2016 hearing, the plaintiffs insisted that a prerequisite for finding a partnership is that it have "ownership" of some tangible asset. But the District of Columbia partnership statute has no such requirement—it merely requires an "association of [two] or more persons to carry on as co-owners of a business for profit . . . ." D.C. Code § 29-602.02(a). And to the extent the plaintiffs contend that the alleged partnership and the Headfirst LLCs cannot, as a matter of law, own the same business, that still does not require that summary judgment be entered in their favor, as a reasonable jury could nonetheless find that the alleged partnership was in the business of expanding whatever business Headfirst Baseball operated. See, e.g., P'ship Opp'n, Ex. 2 (January 2012 Sullivan Email) at HF-0814077 (suggesting that "Headfirst" was a "fledgling company" in 2001 and after the creation of the alleged Headfirst partnership became a "full-time operation").

business arrangement raises eyebrows,[6] it is not legally forbidden, as partnerships may carry out

their business objectives through LLCs.  See, e.g., Leon v. Kelly, No. 07-cv-0467 (JB/WDS),

2008 WL 6011935, at *2-4 (D.N.M. Dec. 3, 2008) (denying summary judgment where there was

a dispute as to whether an LLC was used to carry out business objective of a partnership); Mroz

v. Hoaloha Na Eha, Inc., 410 F. Supp. 2d 919, 932 (D. Haw. 2005) (finding that a partnership

claim existed where it was alleged that there "exist[ed] . . . a partnership which operated through

various [corporate] entities"); cf. September 17, 2012 Hearing Transcript at 21:17-24:6, K Street

Developers, LLC v. Teachers Ins. & Annuity Ass'n of Am., No. 12-cv-666 (D.D.C. Sept. 17,

2012) (denying motion to dismiss claim predicated on allegation that there was an "over-arching

joint venture" that created fiduciary duties between certain parties), ECF No. 18.

　　　The evidentiary record compiled thus far is not without indicia of an overarching

Headfirst partnership.  See Beckman, 579 A.2d at 627 ("profit and loss sharing and joint control

of decisionmaking are necessary guidepoints of inquiry"); see also P'ship Opp'n, Ex. 3 (Sullivan

Dep.) at 261:5-22 ("I paid [defendant Robert Elwood] equally, I treated him as a member of my

family, I trusted him with the finances of this business. . . .  Mr. Elwood[,] of course[,] helped me

build Headfirst Baseball . . . ."); P'ship Opp'n, Ex. 10 (Deposition of Peter A. Genis ("Genis

Dep.")) at 141:10-22 (Headfirst bookkeeper testifying that plaintiff Sullivan and defendant

Robert Elwood shared management decisions); P'ship Opp'n, Ex. 50 (Deposition of Anson

Smith ("Smith Dep.")) at 84:14-97:6 (plaintiff Sullivan and defendant Robert Elwood were

advised to distribute profits among themselves to minimize tax burdens); P'ship Opp'n, Ex. 19

---

[6] It does not go unnoticed that a finding of an existing, overarching Headfirst partnership would mean that plaintiff
Sullivan would be a manager of various Headfirst LLCs, while also being a partner in the Headfirst partnership.
However, nothing prevents him from wearing these hats simultaneously, and whether he breached any fiduciary
duties he owed to the various Headfirst LLCs by entering into this partnership is irrelevant in assessing the issue of
partnership vel non.

(November 2012 Email from Non-Party Sullivan to Plaintiff Sullivan ("November 2012 Non-Party Sullivan Email")) at HF-0839987 (plaintiff Sullivan's brother describing defendant Robert Elwood as "having a critical role of leading the product and being one of the joint leaders of the company" and suggesting that plaintiff Sullivan and defendant Robert Elwood had generally made management decisions collectively); P'ship Opp'n, Ex. 42 (February 2012 Non-Parties' Email) at HF-0833781 ("Brendan and Ted Sullivan are the 50/50 owners of the membership interests of Headfirst Baseball. . . .  The business is now run by [plaintiff Sullivan] and a friend named Rob Elwood.");  P'ship Opp'n, Ex. 7 (November 2008 Email from Plaintiff Sullivan to Non-Parties ("November 2008 Sullivan Email")) at HF-0850316 ("Headfirst is owned and operated by Brendan Sullivan and Robert Elwood."); P'ship Opp'n, Ex. 21 (June 2008 Email from Plaintiff Sullivan to Non-Parties ("June 2008 Sullivan Email")) at Elwood 271662 (plaintiff Sullivan referring to defendant Robert Elwood as a "business partner" and stating that they "run Headfirst"); P'ship Opp'n, Ex. 6 (October 2007 Email from Plaintiff Sullivan to Defendant Robert Elwood ("October 2007 Sullivan Email")) at HF-0147439 (discussing a "Headfirst ownership/profit-share/management situation"); Estoppel/Buyout Summ. J. Mot., Ex. 24 (October 2007 Email from Defendant Robert Elwood to Plaintiff Sullivan ("October 2007 Robert Elwood Email")) at HF-0911919 ("Brendan, I am simply trying to do two things moving forward.  One, become a legitimate partner for a company that I have invested the past full [seven] years of my life into . . . .  The second is that I am trying to provide security for my soon to be family . . . .  The security comes with the fact that if anything were to ever happen to me, . . . my family [and I] would be protected with an <u>ownership stake of my involvement with you and Headfirst</u>." (emphasis added)); Estoppel/Buyout Summ. J. Mot., Ex. 23 (June 2007 Email from Plaintiff Sullivan to Defendant Robert Elwood ("June 2007 Sullivan Email")) at HF-

0541296 ("I need positivity from my <u>partner</u>!!!!!" (emphasis added)).  Thus, based on the evidence adduced by defendant Robert Elwood, a jury could reasonably believe that he and plaintiff Sullivan formed an overarching Headfirst partnership that carried out its business objective through various Headfirst LLCs, which allowed him to access funds from the LLCs for his personal use.  <u>See</u> <u>Beckman</u>, 579 A.2d at 628 ("Ultimately, then, whether a partnership exists is an issue of fact, turning less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions." (citations omitted)); <u>see also</u> <u>id.</u> at 630 ("Our decisions have repeatedly expressed a preference for trial on the merits when interpretation of an ambiguous agreement 'depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.'  These contract interpretation cases reflect the general principal that summary judgment is likely to be inappropriate and should be used sparingly in cases where motive or intent are material." (citation omitted) (quoting <u>Jessamy Fort & Ogletree v. Lenkin</u>, 551 A.2d 830, 831 (D.C. 1988))).  Therefore, awarding summary judgment against defendant Robert Elwood on counts three, four,[7] and six of his counterclaim is legally improper.  <u>See</u> <u>Queen v. Schultz</u>, 747 F.3d 879, 887 (D.C. Cir. 2014) (reversing grant of summary judgment where there was dispute as to whether the plaintiff was an employee of, or partner with, the defendant).

---

[7] Notwithstanding the existence of an overarching Headfirst partnership, a compelled buyout of any such partnership interest would be legally impermissible—at least at this point in time.  <u>See</u> Elwood Countercl. I ¶¶ 118-21 (count four seeking compelled buyout of alleged partnership interest).  Under District of Columbia law, a compelled buyout of a partner can only occur where the partner has been dissociated from the partnership, but the partnership here has neither been dissolved nor terminated.  D.C. Code § 29-607.01(a) (2001) ("If a partner is dissociated from a partnership without resulting in a dissolution and winding up of the partnership business under § 29-608.01, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price . . . .").  Defendant Robert Elwood has never disassociated himself from the alleged partnership.  <u>See</u> P'ship Opp'n at 40 ("[Defendant Robert] Elwood has never expressed any will to withdraw from the Headfirst [p]artnership . . . .").  Therefore, despite denying summary judgment on count four, should defendant Robert Elwood prevail on the partnership issue at trial, he will not be able to obtain as a remedy a compelled buyout from the Court.

### B.      Bifurcation Of The Trial

Defendant Robert Elwood urges the Court to bifurcate the trial in a manner that will allow the parties to have the partnership issue resolved before any other issue in this case is addressed, such as the plaintiffs' conversion claim.  See Bifurcation Mot. at 1.  He contends that without bifurcation, a jury will become "distract[e]d" by the plaintiffs attempt to prove his alleged improper use of Headfirst funds, which is irrelevant to the partnership issue.  See id. at 22.  The Court rejects this concern because introduction of this evidence will be a permissible component of the plaintiffs' efforts to defeat defendant Robert Elwood's partnership theory.

Under Federal Rule of Civil Procedure 42, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).   Here, the Court does not find that bifurcating trial—in the manner proposed by defendant Robert Elwood—will be convenient, necessary to avoid prejudice, or result in the expeditious resolution of this case.  Defendant Robert Elwood's conduct, such as any withdrawal of funds from any Headfirst LLC—authorized or not—must be considered by the jury in assessing whether a partnership existed.  See Queen, 747 F.3d at 887 (alteration omitted) ("Whether a partnership exists is an issue of fact, turning less on the presence or absence of legal essentials than on the intent of the parties gathered from their agreement, conduct, and the circumstances surrounding their transactions." (emphasis added) (quoting Beckman, 579 A.2d at 628)).  By way of example, if the plaintiffs can present evidence that defendant Robert Elwood improperly withdrew funds from a Headfirst LLC resulting in him receiving more than 50% of the profits, such proof could, at a minimum, tend to make the existence of the alleged "50/50" Headfirst partnership less probable.  See Fed. R. Evid. 401.

Defendant Robert Elwood places too much emphasis on <u>Beckman</u> and <u>Queen</u> as support for his bifurcation request.  <u>See </u>Bifurcation Reply at 1-2.  <u>Beckman</u> does not compel the Court to bifurcate the trial whatsoever.  Instead, it bolsters the Court's refusal to do so in the manner requested.  In <u>Beckman</u>, the District of Columbia Court of Appeals remanded the case to the trial court and ordered "a trial <u>combining</u> the issue of partnership <u>and</u> the <u>issues previously submitted to the jury</u>," including claims involving "civil conspiracy, fraud[,] and conversion," as well as damages.  579 A.2d at 622 (emphasis added).  And in <u>Queen</u>, the District of Columbia Circuit instructed the district court on remand to bifurcate the trial and have the jury resolve the question of liability first, before considering whether damages should be awarded.  <u>See </u>747 F.3d at 889 ("In any event, any consideration of the amount of damages payable to Queen would be premature in advance of a jury verdict on whether the parties formed a partnership in the first place."); <u>see also</u> Pretrial Conference Transcript at 72:11-73:10, <u>Queen v. Shultz</u>, No. 11-cv-871 (D.D.C. May 1, 2015) ("Those two facts: [f]ormation of the partnership [and] breach of the duty of loyalty, . . . are the factual issues that this jury has to decide before, as the Circuit made clear, we may proceed to the damages portion."), ECF No. 208.  Defendant Robert Elwood's proposal here, however, would bifurcate trial in a manner that would result in <u>some</u> liability issues remaining for resolution during the damages portion of the trial.  In other words, there would be no clean bifurcation of the trial into a liability phase and a damages phase.  <u>Queen</u> does not instruct the Court to bifurcate trials in this manner.  Thus, consistent with the guidance provided by <u>Queen</u>, the Court will bifurcate trial such that <u>all</u> liability issues—not just the partnership issue—will be tried separately from question of damages.[8]

---

[8] Contrary to defendant Robert Elwood's suggestion, <u>see</u> Bifurcation Mot. at 19 n.5, the Court will be able to properly instruct the jury.  This will be accomplished by instructing the jury on the applicable law if it finds the existence of a partnership, as well the applicable law if no partnership is found to exist.

(continued . . . )

**C.      Summary Judgment On Count Five Of Defendant Robert Elwood's Amended Counterclaim**

Defendant Robert Elwood contends in count five of his amended counterclaim that plaintiff Sullivan is estopped from denying the existence of the overarching Headfirst partnership because plaintiff Sullivan "repeatedly and expressly promised, stated[,] and assured [defendant Robert] Elwood that he was a [fifty percent] partner in and owner of [the] Headfirst [partnership]." Elwood Countercl. I ¶¶ 122-24.  However, as a matter of law, there is no sufficiently definite promise on which this count can survive.

"[T]o find a party liable on a theory of promissory estoppel, there must be evidence of a promise, the promise must reasonably induce reliance upon it, and the promise must be relied upon to the detriment of the promisee." Simard v. Resolution Trust Corp., 639 A.2d 540, 552 (D.C. 1994) (citing Bender v. Design Store Corp., 404 A.2d 194, 196 (D.C. 1979)).  "[A] promise is 'an expression of intention that the promisor will conduct himself in a specified way or bring about a specified result in the future, communicated in such a manner to a promisee that he may justly expect performance and may reasonably rely thereon.'" Choate v. TRW, Inc., 14 F.3d 74, 77-78 (D.C. Cir. 1994) (emphasis added) (quoting 1 Corbin on Contracts § 13 (1963)). "The promise must be definite, as reliance on an indefinite promise is not reasonable." In re U.S. Office Prods. Co. Sec. Litig., 251 F. Supp. 2d 58, 73 (D.D.C. 2003) (emphasis added) (citing cases).   And although "a promise need not be as specific and definite as a contract, it must still

---

( . . . continued)

    Further, as the Court has indicated with respect to the alleged improper withdrawal of LLC funds by defendant Robert Elwood, some evidence concerning damages may also be relevant to certain issues affecting liability.  The Court will not preclude such evidence in the first phase of trial.  But evidence that is strictly relevant to damages will be precluded.  If the parties cannot come to an agreement as to the scope of evidence that may be admissible in either phase of the trial, they shall bring their differences to the Court's attention through either their motions in limine or their joint pre-trial statement, whichever is the more appropriate vehicle.

be a promise with definite terms on which the promisor would expect the promisee to rely." Id. (citing cases).

Here, defendant Robert Elwood's own words undermine his promissory estoppel claim, which prevent the claim from surviving summary judgment. See Bender, 404 A.2d at 196. This result is demanded because there is no evidence of a clear promise.[9] See In re U.S. Office Prods., 251 F. Supp. 2d at 71-73 (dismissing promissory estoppel claim where alleged promise was "indefinite" because conduct of promisors indicated that they "did not intend to be bound" by the promise). In defendant Robert Elwood's declaration, he claims that he and plaintiff Sullivan "agreed to associate together to carry on as co-owners for profit a business called Headfirst" in 2001. P'ship Opp'n, Ex. 49 (Declaration of Robert Elwood ("Elwood Decl.")) at 1. However, missing from his declaration is any mention as to what precisely constituted the "business" that would be owned by the partnership or the partnership's business objective, let alone that the partnership would carry out its business through the use of various LLCs. See Dolan v. McQuaide, 79 A.3d 394, 399-401 (Md. Ct. Spec. App. 2013) (affirming dismissal of promissory estoppel claim, where plaintiff sought a partnership interest in business, because

---

[9] In opposing plaintiff Sullivan's summary judgment motion on the promissory estoppel claim, defendant Robert Elwood claims that he "has presented direct evidence of a promise and agreement" and cites his deposition testimony and his declaration. Estoppel/Buyout Opp'n at 3 (referring the Court to proffered undisputed fact number 203, which cites deposition testimony). His position is rejected for several reasons. First, nothing in the cited excerpt of his deposition testimony concerns a promise with respect to an overarching Headfirst partnership, let alone a partnership in which he and plaintiff Sullivan were each fifty-fifty partners—instead, the testimony refers to an alleged agreement concerning ownership of Headfirst Baseball. See Estoppel/Buyout Opp'n, Ex. 45 (Deposition of Robert M. Elwood ("Elwood Dep.")) at 105:5-107:12. Even under the assumption that the testimony concerned the alleged partnership, which no reasonable jury could find, defendant Robert Elwood understood that the partnership would not come into existence until it was documented in writing. See id. at 108:8-109:21. Second, the Court must disregard defendant Robert Elwood's declaration as a sham affidavit. The sham affidavit rule "precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony." Galvin v. Eli Lilly & Co., 488 F.3d 1026, 1030 (D.C. Cir. 2007) (citations omitted) (quoting Pyramid Sec. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991)). As just alluded to, defendant Robert Elwood's declaration contradicts his deposition testimony, which, at best, concerns a promise with respect to Headfirst Baseball and not a Headfirst partnership.

circumstances surrounding the alleged promise were too vague to enforce), <u>cert. denied</u>, 96 A.3d

145 (Md. 2014)[10]; <u>cf. Simard</u>, 639 A.2d at 552-53 (affirming summary judgment on promissory

estoppel claim where "any inference of a promise of employment for a fixed period" was

"negate[d]" because the "terms and conditions" of employment were not discussed).

     Moreover, defendant Robert Elwood's communications with plaintiff Sullivan

throughout the relevant time frame, which appear in other exhibits attached to his various

summary judgment submissions, make clear that plaintiff Sullivan, at most, promised him that

they would enter into a partnership arrangement only if it was reduced to writing.  <u>See</u>

Estoppel/Buyout Opp'n, Ex. 1 (January 2012 Email from Defendant Robert Elwood to Plaintiff

Sullivan ("January 2012 Robert Elwood Email")) at HF-0242239 ("I hope you understand

Brendan, but the more I think about all of this the more upset I get that we are now in 2012 (what

has been [an] [eight-plus] year conversation) and this is still not settled.  I am sorry to

communicate this over email, but when I requested us to have this settled back in September

2011, I held back from bugging you[,] trusting it would happen. . . .  <u>I have absolutely no</u>

<u>security whatsoever.  I have poured my heart into this company since 1999[,] and on paper[,] the</u>

<u>empire I have helped build to date is legally worthless</u>.  I [do not] know too many people who

would have been this patient with all this . . . ." (emphasis added)); Estoppel/Buyout Opp'n, Ex.

5 (January 2012 Email from Defendant Robert Elwood to Plaintiff Sullivan ("January 2012

Robert Elwood Email")) at Elwood 273632 ("I just want to see closure immediately so I can

personally focus on the business at hand. . . . I have been patiently waiting.  The details have

been there for [ten] years and not one thing has changed. . . .  The fact that it had been taking this

---

[10]  The Court considers Maryland case authority for guidance because it serves as persuasive authority in the District of Columbia concerning issues of substantive local law.  <u>E.g.</u>, <u>Napoleon v. Heard</u>, 455 A.2d 901, 903 (D.C. 1983); <u>see also</u> <u>Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp.</u>, 758 F.3d 378, 383 (D.C. Cir. 2014).

long only suggests that there are major concerns/challenges that are bei[n]g kept from me. . . . I would really like to add into that paperwork my legal interest in the company I built with you . . . .” (emphasis added)); Estoppel/Buyout Mot., Ex. 24 (October 2007 Robert Elwood Email) at HF-0911919 (“I . . . know that you are trying to figure out the best way to execute a document[] to get all of this done. . . . Brendan, I am simply trying to . . . provide security for my soon to be family . . . . The security comes with the fact that if anything were to ever happen to me, . . . my family [and I] would be protected with an ownership stake of my involvement with you and Headfirst.” (emphasis added)); see also Estoppel/Buyout Opp’n, Ex. 2 (February 2012 Email from Non-Party Sullivan to Plaintiff Sullivan (“February 2012 Non-Party Sullivan Email”)) at HF-0814075 (“[Defendant Robert Elwood] has acted carelessly.  He should have demanded equity before his first day of work (not to mention every day since).  [He has] asked for it, even pestered you for it.  But he never demanded it.  He never said [he would] stop working if he [did not] have it.  In fact, he worked his ass off even though he [did not] have it.  He has been paid very well for his efforts.”).  An assurance from plaintiff Sullivan that he would at some point in the future memorialize their partnership in writing is legally insufficient to carry the day.  See New Econ. Capital, LLC v. New Markets Capital Grp., 881 A.2d 1087, 1097 (D.C. 2005) (affirming grant of summary judgment on promissory estoppel claim where assurances of future memorialization of agreement did not amount to promise); see also Choate, 14 F.3d at 77 (reasoning that an assurance is not a promise); Osseiran v. Int’l Fin. Corp., 889 F. Supp. 2d 30, 35 (D.D.C. 2012) (“A promise to do something does not reasonably induce reliance where, as here, the promissor repeatedly and expressly conditions fulfilling the promise on the execution of formal documentation.”).  The fact that plaintiff Sullivan may have sometimes “acted in conformity with . . . [the alleged] promise” is also insufficient to infer a promise for estoppel

purposes.[11]  See Bender, 404 A.2d at 196 (despite some conduct consistent with alleged promise, "argument that a promise to lease can be inferred from . . . conduct [was] unpersuasive").

In sum, the alleged promise of a partnership here as the basis for estoppel is not one that "[a] promisor would expect [a] promisee to rely [upon]," In re U.S. Office Prods., 251 F. Supp. 2d at 73 (citing Bender, 404 A.2d at 196), and the inability for a reasonable jury to find a legally sufficient promise, let alone any promise that could reasonably be relied upon, dooms defendant Robert Elwood's promissory estoppel counterclaim.  The Court will, therefore, grant summary judgment in favor of plaintiff Sullivan on count five of defendant Robert Elwood's amended counterclaim.

### D.   Partial Summary Judgment On Counts One And Two Of Defendant Robert Elwood's Amended Counterclaim

Defendant Robert Elwood seeks a compelled buyout of his interest in Headfirst Professional Sports Camps as a result of his expulsion from this LLC.  Elwood Countercl. I ¶¶ 93-101 (count one for breach of operating agreement); id. ¶¶ 102-09 (count two for breach of District of Columbia LLC Act).  Plaintiffs Sullivan and Headfirst Professional Sports Camps, however, contend that the operating agreement for the company neither "contain[s] a provision allowing for a compelled buyout" nor "list[s] removal as [a] manager [of the company] as one of the events that [would] trigger[] a 'Buy-Sell Event,'" Estoppel/Buyout Summ. J. Mot. at 19 (quoting Ex. 40 (Limited Liability Company Agreement of Red Sox Camps, LLC ("Headfirst Professional Sports Camps Operating Agreement")) at 8), and that the District of Columbia LLC

---

[11]  Attempting to negate the inference of a promise, plaintiff Sullivan cites negotiations with defendant Robert Elwood concerning ownership interests of certain Headfirst LLCs that were contemplated after the alleged formation of the partnership.  See Estoppel/Buyout Reply at 17-19.  The Court, however, does not find these citations helpful, as the alleged promise concerns an overarching Headfirst partnership, in which defendant Robert Elwood was allegedly an equal partner in all respects, independent of any ownership interest in any Headfirst LLC. Cf. Queen, 747 F.3d at 885 (explaining that discussions subsequent to the alleged formation of an oral contract that are inconsistent with the terms of the alleged contract, do "not necessarily disprove" its existence).

Act ("LLC Act") provides for no such relief, see Estoppel/Buyout Reply at 21.  Assuming that

plaintiff Sullivan does not "prevail[] on his claim that [defendant Robert] Elwood fraudulently

induced him to enter into the . . . operating agreement," they deem defendant Robert Elwood's

only remedies to be restoration to his status as manager and any attendant profits that he would

have been entitled to as a manager of the company.  See Estoppel/Buyout Summ. J. Mot. at 19;

Estoppel/Buyout Reply at 21-22.

It is axiomatic that in a breach of contract action, "[t]he guiding principle in awarding

damages is restoration of the injured party to the position he would have enjoyed if the one guilty

of the breach had complied with his contract."  District of Columbia v. Jones, 442 A.2d 512, 524

(D.C. 1982) (quoting Harris v. Asco, 144 A.2d 544, 545 (D.C. 1958)); accord Brodie v. Jordan,

857 N.E.2d 1076, 1079-80 (Mass. 2006) (proper remedy for freeze-out of minority shareholder

in closely held corporation is to make the shareholder as close to whole as possible).

Here, defendant Robert Elwood does not dispute that the operating agreement does not

provide for the relief he seeks.  And he has not directed the Court to any statutory or case

authority that affords the Court the power or discretion to fashion the relief he seeks.  The LLC

Act permits a court-ordered dissolution or another appropriate remedy in certain circumstances

only when a member of a LLC applies for a dissolution.  D.C. Code § 29-807.01(a)(5), (b).  But

defendant Robert Elwood has neither brought an application pursuant to this section of the LLC

Act nor sought the dissolution of Headfirst Professional Sports Camps.  The case authority cited

by defendant Robert Elwood either involves buyouts in the context of a dissolution proceeding,

see Mizrahi v. Cohen, 961 N.Y.S.2d 538, 538 (N.Y. App. Div. 2013); Haley v. Talcott, 864 A.2d

86, 87 (Del. Ch. 2004) (similar), which again is irrelevant here, or do not concern the remedy of

a buyout whatsoever, see Brazil v. Rickerson, 268 F. Supp. 2d 1091, 1100 (W.D. Mo. 2003).

The Court finds that restoration of defendant Robert Elwood to his status as a manager of Headfirst Professional Sports Camps, as well as any profits he should have earned over the course of his absence from the company, is the relief, if any, he is entitled to receive for his alleged wrongful expulsion.  And, he has not explained how such relief could not make him whole.[12]  Therefore, the Court will partially grant summary judgment and dismiss counts one and two of the amended counterclaim, to the extent that they seek unavailable legal remedies.

### E.      Summary Judgment On Count One Of The Second Amended Complaint

The plaintiffs assert a conversion claim against defendant Stacey Elwood.  Second Am. Compl. ¶¶ 213-17.  In support of this claim, they assert that she "possessed . . . funds belonging to . . . Headfirst Baseball and Headfirst Camps" and a "Headfirst Baseball . . . credit card, and used those funds and that credit card to purchase personal items or services for herself and for her family."  Conversion Opp'n at 3.  Their conversion claim is legally flawed.

In the District of Columbia, a conversion claim exists if there is "an unlawful exercise of ownership, dominion, and control over the personalty of another in denial or repudiation of his right to such property."  Wash. Gas Light Co. v. Public Serv. Comm'n of D.C., 61 A.3d 662, 675 (D.C. 2013) (quoting Baltimore v. District of Columbia, 10 A.3d 1141, 1155 (D.C. 2011)).  And

---

[12]  Defendant Robert Elwood questions how he will be remedied for the past and ongoing "depriv[ation] of [his] management rights" in Headfirst Professional Sports Camps.  Estoppel/Buyout Opp'n at 12.  But he seems to answer that question himself—by acknowledging that the loss of those rights can be compensated by money.  His request for a compelled buyout already contemplates some assigned monetary value for his loss of management rights in the company.  See Elwood Countercl. I ¶ 101 ("As a direct result of [plaintiff Sullivan's and plaintiff Headfirst Professional Sports Camps'] material breach of the . . . [o]perating [a]greement, [defendant Robert] Elwood has suffered substantial damages in the amount of no less than the fair value of [his] ownership interest in [Headfirst Professional Sports Camps[,] estimated to be in the amount of $7,500,000 to $10,000,000." (emphasis added)); id. ¶ 109 ("As a direct result of [plaintiff] Sullivan's violations of the D.C. Code . . . [, defendant Robert] Elwood has suffered substantial damages in the amount of no less than the fair value of [his] [fifty-percent] share in . . . [Headfirst Professional Sports Camps[,] estimated to be in the amount of $7,500,000 to $10,000,000, subject to debts, obligations, or liabilities." (emphasis added)); see also Alloy v. Wills Family Trust, 944 A.2d 1234, 1260-61 (Md. Ct. Spec. App. 2008) (analyzing District of Columbia law and concluding that where there is a "'technical violation' of legal rights," sometimes only nominal damages are available (citations omitted)), cert. denied, 950 A.2d 828 (Md. 2008).

"money can be the subject of a conversion claim if the plaintiff has the right to a specific identifiable fund of money." McNamara v. Picken, 950 F. Supp. 2d 193, 194 (D.D.C. 2013) (alteration and ellipses omitted) (quoting Cannon v. Wells Fargo Bank, N.A., 926 F. Supp. 2d 152, 176 (D.D.C. 2013)); see also Darcars Motors of Silver Spring, Inc. v. Borzym, 841 A.2d 828, 833 n.3 (Md. 2004) ("As a general rule, money, i.e., currency, is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds.").

Here, the plaintiffs have not identified a specific fund of money that defendant Stacey Elwood converted—they only contend that funds were stolen from Headfirst Baseball and Headfirst Camps for her personal use.  As a basis for a conversion claim, this contention fails as a matter of law.  See McNamara, 950 F. Supp. 2d at 195 (recognizing that "fungible cash is precisely the type of fund that may not underlie a claim for conversion" and granting summary judgment on conversion claim where plaintiff could not identify the "exact funds" that went into the partnership and were misappropriated, and instead, only argued that "general partnership funds . . . were misdirected" for other purposes).  And the same is the case concerning the alleged unauthorized use of the Headfirst Baseball credit card.  See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., _ F. Supp. 3d _, _, 2015 WL 5449791, at *14, *15 (D.D.C. 2015) (dismissing conversion claim and recognizing "that overcharges or unauthorized charges to a credit card cannot support a conversion claim because such allegations do not call for the return of specific money").  Therefore, summary judgment is awarded to defendant Stacey Elwood on count one of the second amended complaint.

## IV.   CONCLUSION

The evidentiary record with respect to the existence of an overarching Headfirst partnership is littered with ambiguities that the Court must construe in favor of defendant Robert

Elwood, and thus the issue of partnership <u>vel non</u> cannot be resolved through summary judgment and must be submitted to a jury.  <u>See, e.g.</u>, <u>Moore v. Hartman</u>, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing <u>Anderson</u>, 477 U.S. at 255).  At trial, the partnership issue and all other issues concerning liability will be presented to the jury before it hears any evidence concerning damages. Accordingly, the motion for a bifurcated trial is granted in part and denied in part.

Summary judgment on several claims, however, is granted because they are premised on theories that are legally unsound—namely, there is no definite and specific promise that supports the sustainability of defendant Robert Elwood's promissory estoppel counterclaim, there is no authority to compel a buyout of any ownership interest that defendant Robert Elwood may have in either the Headfirst partnership, assuming it exists, or Headfirst Professional Sports Camps, and there is no specific sum of money underlying the conversion claim against defendant Stacey Elwood.

**SO ORDERED** this 7th day of March, 2016.[13]

REGGIE B. WALTON
United States District Judge

---

[13]  An Order consistent with this Memorandum Opinion has been issued contemporaneously.