## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Headfirst Baseball LLC et al.,

        Plaintiffs,

v.

Robert Elwood et al.,

        Defendants.

Civil Action No. 13-cv-536-RBW

Robert Elwood,

        Counterclaim Plaintiff,

v.

Brendan V. Sullivan, III et al.,

        Counterclaim Defendants.

Headfirst Professional Sports Camps LLC,

        Counterclaim Plaintiff,

v.

Robert Elwood,

        Counterclaim Defendant.

### JOINT MOTION IN LIMINE #6

### PLAINTIFFS AND HEADFIRST PROFESSIONAL SPORTS CAMPS LLC'S JOINT MOTION REGARDING LETTERS FROM ELWOOD'S FORMER COUNSEL

Plaintiffs Headfirst Camps LLC, Headfirst Baseball LLC, and Brendan Sullivan III, jointly with Headfirst Professional Sports Camps LLC, respectfully move the Court for a ruling that Federal Rule of Evidence 408 does not apply to certain letters from Elwood's former counsel. These letters were not an attempt to resolve any claim, and even if they were, Rule 408 does not protect fraud.

## BACKGROUND

Elwood's defense to the hundreds of expenditures that Plaintiffs Headfirst Baseball LLC ("Baseball LLC") and Headfirst Camps LLC ("Camps LLC") allege as thefts is that Sullivan authorized Elwood to spend Baseball LLC and Camps LLC funds on personal purchases. *See, e.g.*, ECF No. 66[1]; ECF No. 136.[2] The record evidence contradicts this defense. Some of the most powerful evidence contradicting this defense includes assertions by Elwood about these expenditures in a series of letters from his former counsel before this lawsuit was filed.

In early 2013, after terminating Elwood from his employment at Headfirst Baseball LLC and Headfirst Camps LLC, Plaintiffs asked him about certain expenditures so that the companies could, among other things, correct their books and records and file amended tax returns. Elwood provided explanations for these expenditures through counsel, and these responses are attached as Exhibits (the "Elwood Letters"). *See* Ex. 1-4. Many of the explanations Elwood provided are demonstrably false, and he admitted many were false during his deposition. These false explanations cast doubt upon the truthfulness of Elwood's defense that the expenditures were

---

[1] *See, e.g.*, ECF No. 66 ¶ 22 ("Elwood admits that he and Sullivan, pursuant to their agreement and practice as partners and owners, used credit cards issued by Headfirst to each of them for their use to pay for personal expenditures.").

[2] *See, e.g.*, ECF No. 136 at 7 ("With each other's knowledge and consent, Sullivan III and Elwood distributed profits of the LLCs to themselves and used company funds for personal purposes.").

authorized.  If it were true that these expenditures were authorized, then Elwood would not have needed to make up false explanations for them when confronted.  Elwood appears to have written these explanations himself.  There is no evidence that Elwood's counsel knew that these explanations were false, and Plaintiffs' counsel does not assert this.

Plaintiffs plan to offer many of these letters into evidence at trial under Federal Rule of Evidence 801(d)(2).  Plaintiffs therefore listed these letters on the draft exhibit list they have shared with Elwood's counsel as part of the pretrial exchange of information.  Elwood's counsel has objected to the admissibility of these letters on the grounds that they are "compromise offers and negotiations," among other grounds.

Rule 408 does not apply to these letters for two reasons: (1) these letters were not an attempt to resolve any claim; and (2) Rule 408 does not protect fraud.  Because Plaintiffs intend to use these documents at trial, they respectfully move the Court for a ruling that Rule 408 does not apply to these letters.

## I.   Elwood has repeatedly changed his story in an attempt to explain and cover up his thefts.

To put the current dispute in context, it is necessary to examine Elwood's changing explanations for his thefts.  First, Elwood falsely coded many of these expenditures as business expenses on the books of Baseball LLC and Camps LLC.  Next, when his thefts were discovered by Sullivan, Elwood apologized and admitted that many of the expenditures were unauthorized and personal.  Then, when Plaintiffs sent letters asking about these expenditures, Elwood make up false explanations for many of them, trying again to justify them as business expenses.  Elwood now admits that these expenditures were personal, but claims that they were authorized.  Similarly, he now claims that all of these expenditures were from some sort of partnership that

he in part owned.[3]  Elwood's evolving and irreconcilable changes to his explanation for these expenditures are relevant to show the jury why there is good reason to doubt Elwood's current defense.  And the letters containing false explanations that Elwood sent through his former counsel are an integral part of that story.

### A.      Elwood fraudulently recorded his expenditures on the companies' books.

Elwood falsely recorded his expenditures on the Headfirst companies' books.  For just one example of many, Elwood rented a house on the Chesapeake Bay for a year using $36,000 of Headfirst company funds, and ordered that the companies' bookkeeper code the payments as "Headfirst consulting."  Ex. 5.  This false coding belies Elwood's defense that this expenditure was authorized by Sullivan—if Elwood had Sullivan's authorization, he would have had no reason to falsify the companies' books about the expenditures.

### B.      Once caught, Elwood apologized and admitted to making unauthorized, personal expenditures of Baseball LLC and Camps LLC funds.

Elwood's initial reaction to Sullivan upon being confronted about his thefts was to apologize and promise to pay back the funds he spent on personal expenditures.  The Headfirst companies' bookkeeper told Sullivan on November 29, 2012 that Camps LLC had insufficient funds to pay Sullivan's whole paycheck because Elwood had $600,000 of outstanding loans from Camps LLC.  Sullivan had not known of or authorized $400,000 of these loans, and Elwood had told Sullivan the other $200,000 would be paid back within months when Elwood took the loan in March 2012.

Stunned by Elwood's unauthorized loans, Sullivan did an initial review of the records of Baseball LLC and Camps LLC.  On December 20, he sent Elwood an email that attached a letter

---

[3] Despite Elwood's latest assertion, this is not actually a defense to conversion.  A partner can steal from a partnership, just like any other entity.

containing a list of about $250,000 in questionable expenditures that Sullivan had identified,

including the $36,000 paid to Jerry South, and Sullivan asked Elwood to identify expenditures

that were personal and those that were business-related.  *See* Ex. 6.  Elwood refused to identify

specifically which expenses were business-related and which were personal.  *See* Ex. 7.  But he

did <u>not</u> assert that Sullivan knew of or approved these expenditures.  In fact, Elwood wrote that

only $135,000 were "business-related or otherwise have traditionally been paid by Headfirst."

*Id.*  Elwood apologized and offered to pay back approximately $112,000, stating: "This will not

happen again and I am sorry for any expenditure that you feel is inappropriate and <u>was made</u>

<u>without your prior knowledge.</u>"  *Id.* (emphasis added).

> **C.      After he was fired, Elwood lied about the expenditures in the Elwood Letters.**

After Elwood was fired effective December 31, 2012, Plaintiffs undertook an extensive

review of their books and records, which was necessary to correct Elwood's fraudulent book

entries, determine what Elwood had stolen, and file amended tax returns.  As part of that review

process in early 2013, Elwood was asked about numerous expenses through his counsel at the

time.  *See, e.g.*, Ex. 8, 9.

Rather than admit that most of the questioned expenditures were personal (which they

were) or that Sullivan authorized the expenditures (which he did not), Elwood instead lied about

many expenditures in a renewed attempt to disguise his thefts as legitimate business expenses.

*See* Ex. 1-4.  It is these responses—which are powerful evidence of Elwood's continued fraud—

that Plaintiffs plan to introduce into evidence at trial.  These responses undermine Elwood's

defense that Sullivan somehow authorized Elwood to spend hundreds of thousands of Baseball

LLC and Camps LLC dollars on personal expenses.

Again as just one of many examples of the false statements contained in the Elwood

Letters, Elwood lied about the $36,000 paid to Jerry South to rent his home on the Chesapeake

Bay.  Elwood's explanation for these expenditures in the Elwood Letters is:  "These expenses

cover approximately one half of the rent Mr. Elwood owed Mr. South when he was renting his

house. Mr. South basically charged Mr. Elwood additional rent in exchange for full access to his

company's operations."  Ex. 1 at HF-0000015.  Elwood admitted that this explanation was false

during his deposition:

> Q.  That explanation was not true, was it?
>
> A.  In the practice of the business, <u>the only explanation here that is
>     not true is that Mr. South was charging me for those services</u>.
>     The rest would fall under what I wrote under here, that we
>     were actually receiving these services and due to coding and
>     practice of our business, that this was going to be an expense.
>
> Q.  The $3,000 a month was for rent, correct?
>
> A.  It was coded for rent, yes.
>
> Q.  And in fact –
>
> A.  No, I'm sorry.  The $3,000 – I apologize.  The $3,000 was for
>     rent, yes.
>
> Q.  This explanation that you provided through counsel was false,
>     correct?
>
> A.  <u>Yes</u>. . . .

Ex. 10 at 204:5-20 (emphases added).

Another example of a false explanation in the Elwood Letters relates to Baseball LLC or

Camps LLC money that Elwood spent on personal expenses while he was living on the beach in

New Jersey during the renovation of his Chesapeake Bay home.  While in New Jersey, Elwood

set up a monthly payment to a company called Johnny on the Spot.  When asked about these

expenditures in early 2013, Elwood's explanation was that "these expenses were to rent a

fenced-in storage area for all Yankees Camp and other MLB equipment and is a legitimate

business expense."  Ex. 2 at HF-0000063.  At his deposition, when confronted with Johnny on

the Spot invoices, Elwood admitted that his explanation was false and that the payments were in

fact for a temporary dog fence for his New Jersey beach rental:

> Q.  When you were in Avon-by-the-Sea, New Jersey, did you
>      retain a company called Johnny on the Spot?
>
> A.  Yes.
>
> . . .
>
> Q.  . . . And you explain there, do you not, that this is a legitimate
>      business expense, that these expenses were to rent a fenced in
>      storage area for all Yankees camp and other Major League
>      Baseball equipment and is a legitimate business expense.  Was
>      that your explanation?
>
> A.  Yes, at the time it was my explanation.
>
> Q.  It was false, wasn't it?
>
> A.  Yes.  This one was not stated accurately and I say that not
>      because I did anything wrong but, as I mentioned before, I was
>      pretty scared at this point with Williams & Connolly tack.
>
> Q.  Williams & Connolly was asking for answers to what these
>      expenses were for, correct?
>
> A.  Yes, they were.  There was a lot of questions, yes.
>
> Q.  And you just came up with an explanation for this one that was
>      just a flat-out lie, correct?
>
> A.  This is miscategorized, yes.  This was immature of me, yes.

Ex. 10 at 267:19-269:17 (emphases added).

These two examples are not the only examples of false explanations in the Elwood

Letters, and they are not the only examples of lies Elwood admitted to at his deposition.  But

these examples show that these letters contained false statements by Elwood, and that therefore

Rule 408 should not apply even if they are compromise and negotiation communications.  If it

would help the Court, Plaintiffs can submit additional evidence.

6

**II.      The Elwood Letters are not protected by any applicable settlement privilege.**

Because the Elwood Letters constitute evidence relevant to proving Elwood's original and continuing fraud, and disproving his principle defense, Plaintiffs sought to establish the admissibility of letters using requests for admission.  Elwood conceded that the documents are authentic and that Elwood authorized his counsel to send the letters.  *See* Ex. 11; *see also* Ex. 10 at 201:20-202:15.  Elwood denied, however, that these letters are admissible as party admissions pursuant to Rule 801(d)(2).  Although counsel for Elwood was unable to explain during a November 17, 2014 phone call why the letters were not admissible, Elwood's general objection number eight states that, "The Elwoods object on the grounds that the letters are statements made for the purpose of compromise and are inadmissible under Federal Rules of Evidence 408."  In fact, these letters were not sent for settlement purposes and, even if they were, Rule 408 does not protect fraud.

**A.      The Elwood Letters were not made for settlement purposes; therefore, Rule 408 does not apply.**

As an initial matter, the Elwood Letters were not sent for settlement purposes, making Rule 408 inapplicable.  Each of the post-termination requests to Elwood asked about particular expenses and noted that:

> If you have information about the expenses, please provide it within 14 days to assist the Companies' ongoing audit/investigation. The Companies request that you cooperate with this effort to assure the preparation of accurate books and records, which will be used to facilitate tax filings for Headfirst Camps and Professional Camps.

*See, e.g.*, Ex. 8, 9.  The requests were not marked as settlement offers or settlement communications in any way.  Nor did they ask Elwood to compromise or settle any claim.  In response, the Elwood Letters did not offer to compromise or settle any claim.  Instead, the requests were simply requests for information, to which Elwood responded.

Notably, none of the Elwood Letters indicate in any way that they are protected settlement communications.  *See* Ex. 1-4.  By contrast, Elwood's counsel did indicate in a separate communication <u>not</u> at issue that "we submit this proposal in the course of settlement negotiations and without prejudice to any argument or legal theory we might advance in the event of litigation."  Ex. 12 at 4.  Elwood's counsel therefore knew how to designate communications as settlement communications, and the lack of any such designation on the Elwood Letters should be dispositive; Rule 408 does not protect the Elwood Letters.

**B.     Even if the Elwood Letters were sent for settlement purposes, Rule 408 does not protect fraud.**

It is not necessary for the Court to decide whether the Elwood Letters were sent for settlement purposes for the simple reason that Rule 408 does not protect fraud. As explained above, Elwood provided false explanations in the Elwood Letters as part of a continuing attempt to cover up his thefts by describing personal expenditures as legitimate business expenditures. Fraud such as this is not protected by any privilege, evidentiary or otherwise.  In fact, the Advisory Committee note following Rule 408 states that "Rule 408 is inapplicable if offered to show that a party made fraudulent statements in order to settle a litigation."  Fed. R. Evid. 408 advisory committee's note to 2006 amendment.  *See also, e.g.*, *Larson Mfg. Co. of S. Dakota v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 933 (D.S.D. 2013) (recognizing Rule 408's fraud exception).  There can be no doubt that Elwood's statements in the Elwood Letters are fraudulent—Elwood has admitted they are false, and they are contradicted by the record evidence.  *See* part I.C, *supra*.  Thus, even if the Elwood Letters were written for settlement purposes (and they were not), they fall outside of Rule 408's protection.

*     *     *     *     *

Elwood's explanations for his repeated thefts have shifted over time.  A jury is entitled to hear this ever-changing story and judge Elwood's credibility for themselves. The Elwood Letters are authentic, were authorized by Elwood, and contain repeated evidence of fraud.  Accordingly, the Court should order that the Elwood Letters attached as Exhibits, *see* Ex. 1-4, are not protected by Rule 408 or any other potentially applicable settlement privilege.

## CONCLUSION

For the foregoing reasons, the Court should rule that the Elwood letters are not protected by Rule 408 or any other settlement privilege.


Dated:  July 15, 2016                              Respectfully submitted,

                                                   WILLIAMS & CONNOLLY LLP


                                                   /s/ Simon A. Latcovich
                                                   Michael S. Sundermeyer (DC Bar #931873)
                                                   Robert M. Cary (DC Bar #431815)
                                                   Simon A. Latcovich (DC Bar #980319)
                                                   Alexander S. Zolan (DC Bar #1010091)
                                                   725 12th Street, N.W.
                                                   Washington, DC  20005
                                                   (202) 434-5000

                                                   *Attorneys for Plaintiffs*
                                                   *Headfirst Camps LLC, Headfirst Baseball*
                                                   *LLC, and Brendan V. Sullivan III*

                                                   Thomas J. Ward
                                                   Daniel S. Ward
                                                   WARD & WARD, P.L.L.C.
                                                   2020 N Street, NW
                                                   Washington D.C. 20036

                                                   *Attorneys for Headfirst Professional Sports*
                                                   *Camps LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2016, a copy of this filing was delivered via ECF on the following:

J. Douglas Baldridge
Caroline P. Gately
Moxila A. Upadhyaya
Benjamin E. Horowitz
VENABLE LLP
575 7th Street, NW
Washington DC 20004

*Counsel for Robert and Stacey Elwood*

/s/ Simon A. Latcovich
Simon A. Latcovich