**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
HEADFIRST BASEBALL LLC, et al.,                     )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )
                                                    )
ROBERT ELWOOD et al.,                               )
                                                    )
            Defendants.                             )
_____)
ROBERT ELWOOD,                                      )
                                                    )
            Counterclaim Plaintiff,                 )
                                                    )
v.                                                  )        Civil Action No. 13-536 (RBW)
                                                    )
BRENDAN V. SULLIVAN III, et al.,                    )
                                                    )
            Counterclaim Defendants.                )
_____)
                                                    )
HEADFIRST PROFESSIONAL SPORTS,                      )
CAMPS LLC,                                          )
                                                    )
            Counterclaim Plaintiff,                 )
                                                    )
      v.                                            )
                                                    )
ROBERT ELWOOD,                                      )
                                                    )
            Counterclaim Defendant.                 )
_____)

**MEMORANDUM OPINION**

      The plaintiffs, Headfirst Baseball LLC, et al., filed this civil action on April 21, 2013,

alleging that they terminated their relationship with defendant Robert Elwood after discovering

that he had allegedly misappropriated hundreds of thousands of dollars from the plaintiffs over

several years, using the money for non-business purposes, i.e., personal expenditures, and that defendant Stacey Elwood was complicit in this alleged conduct. See Headfirst Baseball LLC v. Elwood, __ F. Supp. 3d __, __, 2016 WL 912166, at *2 (D.D.C. Mar. 7, 2016).  On July 12, 2013, defendant Robert Elwood filed several counterclaims against plaintiff Sullivan, seeking a declaration of the existence of the alleged Headfirst partnership, see id. (citing Elwood Countercl. ¶¶ 110-17, 122-28), and damages resulting from being ousted from the alleged partnership, see id. (citing Elwood Countercl. ¶¶ 118-21, 129-35).  He also filed a counterclaim against Headfirst Professional Sports Camps seeking a compelled buyout of his undisputed 50% interest in the company.  See id. (citing Elwood Countercl. ¶¶ 93-109).  Currently pending before the Court is defendant-counterclaim plaintiff Robert Elwood's Motion for Leave to File Second Amended Counterclaim Against Sullivan and Headfirst Professional Sports Camps LLC and Memorandum in Support ("Def.'s Mot.").  Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny defendant Robert Elwood's motion for leave to file a second amended counterclaim.

## I.      BACKGROUND

Much of the factual background of this case was previously set forth by the Court, see Headfirst Baseball, __ F. Supp. 3d at __, 2016 WL 91266, at *2, which need not be repeated here to resolve the motion now before the Court.

Procedurally, on November 6, 2014, defendant Robert Elwood amended his counterclaim.  See Answer to Second Amended Complaint of Sullivan, Headfirst Baseball, and

---

[1] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Joint Opposition of Brendan V. Sullivan III and Headfirst Professional Sports Camps LLC to Elwood's Motion for Leave to File a Second Amended Counterclaim ("Pls.' Opp'n"), ECF No. 154; and (2) Elwood's Memorandum in Reply to Opposition to Motion for Leave to File Second Amended Counterclaim Against Sullivan and Headfirst Professional Sports Camps LLC ("Def.'s Reply"), ECF No. 155.

Headfirst Camps, Elwood's Amended Counterclaim, and Jury Demand (Nov. 6, 2014), ECF No. 66. Thereafter, on December 1, 2014, the parties filed a joint report of their Rule 26(f) conference that included a proposed scheduling order which designated December 31, 2014, as the proposed deadline for amending the pleadings. See Joint Report of Rule 26(f) Conference (Dec. 1, 2014), ECF No. 70. The Court accepted the parties' proposed deadline for the amendment of the pleadings, see Scheduling Order at 1 (Dec. 9, 2014), ECF No. 71, and set June 5, 2015, as the date for the close of discovery, see id. at 2.

After the close of discovery, the parties filed summary judgment motions, and the Court issued its ruling on these motions on March 7, 2016. See Headfirst Baseball, __ F. Supp. 3d at __, 2016 WL 91266, at *1. Pursuant to Local Rule 16 and the Court's Pretrial Order, the parties, on May 19, 2016, met and conferred regarding the trial and made "pretrial exchanges, including proposed jury instructions, witness lists, exhibit lists, and exhibits between June 7 and 14, 2016." Pls.' Opp'n at 6. On June 13, 2016, defendant Robert Elwood sought the plaintiffs' consent to further amend his counterclaim, see id., and on the same day, filed his motion for leave to file a second amended counterclaim

> (1) to respond to the Court's March 2016 summary judgment opinion in which the Court stated its view of what relief would be available based on the existing circumstances and legal theories, and (2) to respond to the [p]laintiffs' position, first raised on May 16, 2016, that in light of the Court's summary judgment opinion, Elwood's expert's opinion on valuation of the Headfirst Partnership is no longer admissible.

Def.'s Reply at 2.

## II.    DISCUSSION

The plaintiffs assert four arguments in opposition to defendant Robert Elwood's current motion to amend his counterclaim: (1) there is no good cause to justify a significant deviation from the Court's scheduling order and, if defendant Robert Elwood could establish good cause,

leave to file the second amended counterclaim should be denied because (2) defendant Robert

Elwood unduly delayed asserting these additional claims, (3) leave to file would cause undue

prejudice, and (4) the defendant's motion is futile, at least in regards to one of the additional

claims asserted. See Pls.' Opp'n at 2. The Court will address each of the plaintiffs' arguments

in turn.

### A.  The Good Cause Standard of Rule 16 of the Federal Rules Civil Procedure Governs

The plaintiffs contend that the applicable law governing the motion now before the Court

is the "good cause" standard of Federal Rules of Civil Procedure Rule 16(b) ("Rule 16(b)"), and

more importantly, that under this standard, defendant Robert Elwood has failed to provide the

Court with the requisite

> good cause [as to] why the Court should permit him to modify the Court's scheduling Order by amending his counterclaim eighteen months after the Scheduling Order's deadline for amendments to pleadings, twelve months after the close of discovery, three months after summary judgment was decided, during the parties' pretrial exchanges of information under Local Rule 16, and just months away from trial.

Id. at 8-9. Defendant Robert Elwood responds that Federal Rules of Civil Procedure Rule 15(a)

("Rule 15(a)"), which requires district courts to grant leave to file amended pleadings "when

justice so requires," Fed. R. Civ. P. 15(a)(2), is the applicable legal standard and that the "D.C.

Circuit Court of Appeals held that where the amended pleadings add no new factual allegations,

the court should grant leave unless there would be prejudice to the opposing party – without

regard to delay." Def.'s Reply at 5 (citing Harrison v. Rubin, 174 F.3d 249, 253 (D.C. Cir.

1999)). However, the Court agrees with the plaintiffs that the "good cause" standard of Rule

16(b) applies.

"Although the D.C. Circuit has not had occasion to address this issue, district court case law [in this District] makes clear that once the court enters a scheduling order, that schedule can only be modified with the court's consent and with good cause shown." A Love of Food I, LLC v. Maoz Vegetarian USA, Inc., 292 F.R.D. 142, 143 (D.D.C. 2013) (citing cases); see also Lurie v. Mid-Atl. Permanente Med. Grp., P.C., 589 F. Supp. 2d 21, 23 (D.D.C. 2008) ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." (quoting Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008))). While Rule 15(a) governs motions to amend pleadings filed within the time allotted by the scheduling order, Rule 16(b) governs motions to amend pleadings filed after the deadline provided by the scheduling order. See Brooks v. Clinton, 841 F. Supp. 2d 287, 296 (D.D.C 2012). "To hold otherwise would allow Rule 16's standards to be short circuited by those of Rule 15 and would allow for parties to disregard scheduling orders, which would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." Lurie, 589 F. Supp. 2d at 23 (internal citations and quotations omitted). "This approach is consistent with the circuits that have addressed this question." A Love of Food, 292 F.R.D. at 144 (citing Nourison Rug Corp., 535 F.3d at 298 (identifying cases from the First, Second, Fifth, Sixth, Eighth, and Eleventh Circuits that have address the question)).

As already noted, defendant Robert Elwood relies on the District of Columbia Circuit's decision in Harrison v. Rubin, 174 F.3d 249, as support for his position that Rule 15(a)'s more liberal "when justice so requires" standard controls whether he can further amend his counterclaim. On appeal in Harrison, the plaintiff argued that the district court abused its

discretion in denying her motion to amend her complaint, whereby she sought to correct an erroneous statutory citation by substituting the Rehabilitation Act for the American with Disabilities Act ("ADA") as the basis for her discrimination claim after the defendant moved for dismissal or summary judgment on the plaintiff's ADA claim because "the ADA does not apply to noncongressional federal workers." Harrison, 174 F.3d at 252. In denying her motion to amend, the district court concluded that it was "too late in the process for [the p]laintiff to amend her complaint . . . [because] [t]wo years have passed since the filing of her complaint. The case is nearing trial, and the parties have almost concluded their pre-trial discovery." Id. (citations and quotations omitted). In applying Rule 15(a)'s standard, the Circuit, however, reasoned that "[w]here an amendment would do no more than clarify legal theories or make technical corrections, we have consistently held that delay, without a showing of prejudice, is not sufficient ground for denying the motion." Id. at 253 (citation omitted). Therefore, the Circuit held that the district court should have granted the plaintiff's motion to amend her complaint because she "sought to add no new factual allegations[,] . . . the government claimed no prejudice . . . [and] the district court found no prejudice." Id.

The Court finds the present situation distinguishable from Harrison. Notably, in Harrison, the Circuit was not presented with the question of whether the standards provided by Rule 15(a) or those provided by Rule 16(b) were applicable; rather, the Circuit was presented only with the question of whether undue delay was a sufficient basis to deny the plaintiff's motion to amend her complaint. See id. at 252 ("According to the government, undue delay is a permissible basis for denying any motion to amend."). Unlike Harrison, the Court's central task, in the present case, is resolving the question of which of the two standards govern.

Moreover, the plaintiff in <u>Harrison</u> was merely seeking to amend a technical error by substituting the Rehabilitation Act for the ADA and did not seek to add any additional factual allegations. <u>See id.</u> at 253 ("[T]he district court found no prejudice, and for good reason: Claims and defenses under the two statutes are virtually identical."). And the plaintiff in <u>Harrison</u> sought to amend her complaint before the district court ruled on the defendant's motion for dismissal. <u>See id.</u> at 252. But, in this case, although defendant Robert Elwood repeatedly states that "the amended pleading adds only legal theories arising from the same set of facts and does not add any new facts," Def.'s Mot. at 1, he alleges new facts relating to the "current status of the Headfirst business" and its activity after the end of 2012 to bolster two of his existing claims and to support newly pleaded claims, <u>id.</u> at 1-2 ("[T]here are no new factual allegations in the Second Amended Complaint, other than the undisputed fact known to Sullivan that he has continued to operate the Headfirst business under the Headfirst name without allowing Elwood to participate in the management of the business or the sharing of its profits."); <u>see also</u> Def.'s Mot., Exhibit ("Ex.") B (Comparison of Proposed Seconded Amended Counterclaim to First Amended Counterclaim) ("Comparison of Counterclaims") ¶¶ 102-03, 112-113, 155-79. More importantly, defendant Robert Elwood pleads new facts that alter his prior position, Def.'s Mot., Ex. B (Comparison of Counterclaims) ¶ 170 (stating that "Elwood hereby gives notice of his dissociation from the Headfirst Partnership . . . ."), in response to the Court's ruling in its summary judgment opinion that "a compelled buyout of any such partnership interest would be legally impermissible—at least at this point in time . . . [because defendant Robert Elwood] has never disassociated himself from the alleged partnership," <u>Headfirst Baseball</u>, __ F. Supp. 3d at __, 2016 WL 912166, at *5 n.7 ; <u>see also</u>, Def.'s Mot. at 2 ("The amendment responds to the Court's summary judgment order, in which the Court noted that a compelled buyout would be

premature based on the Amended Counterclaim on the ground that Elwood has not yet been dissociated from the partnership."). Consequently, the Court finds that the facts in <u>Harrison</u> are distinguishable from those in this case.

Accordingly, because other members of this district court and other circuits that have addressed the issue of whether Rule 15(a) or Rule 16(b) applies have found that the "good cause" standard of Rule 16(b) governs motions to amend pleadings that are filed after the deadline imposed by a court's scheduling order, and because the Court concludes that the facts in the Circuit's decision in <u>Harrison</u> are distinguishable from the facts here, the Court finds that the "good cause" standard provided by Rule 16(b) governs whether defendant Robert Elwood should be permitted to amend his counterclaim.

### B. Defendant Robert Elwood's Proffer of Good Cause

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The determination of whether good cause exists turns on the moving party's diligence. <u>See A Love of Food</u>, 292 F.R.D. at 144. Thus, "the Court's inquiry must focus on the reasons the [defendant] has given for his delay instead of the substance of the proposed amendment."[2] <u>Lurie</u>, 589 F. Supp. 2d at 23. In other words, "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission." <u>Id.</u> (citations and quotations omitted). Additionally, if the moving party establishes that he in fact acted diligently, he must also show that there is a lack of prejudice to the opposing party. <u>See In re Papst Licensing GmbH & Co. KG Litig.</u>, 767 F. Supp. 2d 1, 8

---

[2] Because the futility of the proposed second amended counterclaim concerns the substance of the proposed amendments, and because the substance of the proposed amendments is not a factor for consideration in the "good cause" analysis, the Court need not consider the parties' arguments relating to the futility of the proposed amendments. <u>See Lurie</u>, 589 F. Supp. 2d at 23 (citing <u>O'Connell v. Hyatt Hotels of Puerto Rico</u>, 357 F.3d 152, 155 (1st Cir. 2004) (noting that the Court in <u>O'Connell</u> refused "to address whether the amendment to the complaint would be 'futile,' because futility is a Rule 15(a) consideration, not a Rule 16(b) consideration")).

(D.D.C. 2011); see also United States v. Kellogg Brown & Root Servs., Inc., 285 F.R.D. 133, 136 (D.D.C. 2012) ("If the party was not diligent, the inquiry should end." (citation omitted)).

Here, defendant Robert Elwood contends that he "has not delayed" seeking to amend his counterclaim for a second time because the proposed amendments are

> necessitated by two developments: (1) the Court's March 2016 summary judgment opinion in which the Court potentially states its view of what relief would be available based on the existing circumstances and legal theories, and (2) the Plaintiffs' May 16, 2016, e-mail in which the Plaintiffs first made the assertion that, in light of the Court's summary judgment opinion, Elwood's expert's opinion on valuation of the Headfirst Partnership is no longer admissible.

Def.'s Reply at 5. The Court, however, is not convinced that defendant Robert Elwood's explanations for his delay in seeking the proposed amendments sufficiently shows that he acted with adequate diligence to warrant a finding of good cause.

As referenced above, the Court noted in its prior summary judgment memorandum in this case that "despite denying summary judgment . . . , should defendant Robert Elwood prevail on the partnership issue at trial, he will not be able to obtain as a remedy a compelled buyout from the Court . . . [because he] has never disassociated himself form the alleged partnership" as required under District of Columbia law. Headfirst Baseball, __ F. Supp. 3d at __, 2016 WL 912166, at *5 n.7; see also Elwood Summary Judgment Opposition at 40, ECF No. 136 ("Elwood has never expressed any will to withdraw from the [alleged] Headfirst Partnership and it is beyond the pale for Sullivan III to suggest that he simply 'left the partnership.'"). Now, defendant Robert Elwood seeks to give "notice of dissociation from the [alleged] Headfirst Partnership . . . , which he does reluctantly and under protest, forced by Sullivan's involuntary dissociation of Elwood." Def.'s Mot., Ex. B (Comparison of Counterclaims) ¶ 170. To allow defendant Robert Elwood leave to file his second amended counterclaim at this juncture "would allow him to circumvent the effect of the [Court's summary judgment] order that terminated

[certain relief he sought]." <u>Brown v. F.B.I.</u>, 744 F. Supp. 2d 120, 123 (D.D.C. 2010).   Thus, the Court denies defendant Robert Elwood's request for leave to file this proposed amendment. <u>See</u> <u>Hoffman v. United States</u>, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) (a "plaintiff, quite simply, cannot be permitted to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens." (internal citations and quotations omitted)).

More importantly, defendant Robert Elwood's proposed amendments seek to provide additional factual support for two of his existing counterclaims,[3] <u>see</u> Def.'s Mot., Ex. B (Comparison of Counterclaims) ¶¶ 102-03, 112-13, as well as add two new counterclaims asserting breach of partnership agreement by repudiation and misappropriation of goodwill against plaintiff Sullivan, <u>see</u> <u>id.</u> ¶¶ 155-65, 174-79. Defendant Robert Elwood readily admits that the enhanced factual support for the existing claims and the additional counterclaims are supported by new factual allegations that "describe the current status of the Headfirst business." Def.'s Mot. at 1. He further represents, however, that these new factual allegations "merely update[ ] the pleadings with facts that arose post-litigation [and] that Elwood learned from discovery he obtained [from] Headfirst's financial books and records." <u>Id.</u> at 3. But as the plaintiffs correctly assert, these newly pleaded factual allegations are not facts that were "<u>recently discovered</u> [, particularly since] discovery closed over a year ago . . . ." Pls.' Opp'n at 5. In fact, defendant Robert Elwood "had possession of [Headfirst's financial] books and records in which the 2013 allocations were recorded since October 2014, which was before Elwood last

---

[3] Defendant Robert Elwood notes that the additional factual support for two of his existing counterclaims "pertain[s] to the Court's finding in its summary judgment opinion as to Counts I and II against [Headfirst Professional Sports Camps] 'that restoration of defendant Robert Elwood to his status as a manager of [Headfirst Professional Sports Camps], as well as any profits he should have earned over the course of his absence from the company, is the relief, if any, he is entitled to receive for his alleged wrongful expulsion' . . . [and also] address the diversion of profits from Professional, which diminished Elwood's earnings to nothing during his wrongful expulsion." Def.'s Reply at 9-10.

amended his counterclaim . . . [and] the books and records in which the 2014 allocations were recorded since March 2015, which was prior to the close of discovery." Id. at 10.  Also,

> [i]n May 2015, Elwood issued an interrogatory seeking information about transfers between Headfirst Baseball LLC or Headfirst Camps LLC on the one hand, and Professional LLC on the other.  And Elwood's counsel asked questions about the indirect cost allocation methodology during a 30(b)(6) deposition of Headfirst Baseball LLC in June 2015.[4]

Id.  Therefore, because defendant Robert Elwood was aware of these newly pleaded factual allegations for at least a year since discovery closed and only now seeks to add these factual allegations to "accomplish the ultimate objective of obtaining [some] relief" in light of the Court's summary judgment ruling that was issued three months prior to the filing of this present motion, the Court finds that defendant Robert Elwood failed to diligently move to amend his counterclaim.  See In Papst Licensing, 762 F. Supp. 2d at 59-60 (holding that the plaintiff was not diligent in seeking to amend its complaint since the plaintiff sought to amend more than a year later after becoming aware of the new factual allegations it sought to add); see also United States v. Eisenberg, 149 F. Supp. 3d 71, 86 (D.D.C. 2015) (holding that the defendant acted with undue delay by waiting six months after settlement discussions to move to amend his answer and to assert counterclaims); Lurie, 589 F. Supp. 2d at 24 (holding that the plaintiff's explanation fell short of the good cause showing needed to amend his complaint by failing to "assert punitive damages in time to comply with the Court's scheduling order, as [he] apparently could have easily done with due diligence").

Despite the delay, defendant Robert Elwood relies on the holding of Estate of Gaither ex

---

[4] In his reply brief, defendant Robert Elwood does not address this significant factual argument made by the plaintiffs in their opposition.  Accordingly, the Court can consider this argument conceded by defendant Robert Elwood.  See Day v. D.C. Dep't of Consumer and Regulatory Affairs, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

rel Gaither v. District of Columbia, 272 F.R.D. 248 (D.D.C. 2011), see Def.'s Reply at 5, "to justify [him] seeking to amend his counterclaim eighteen months after the Scheduling Order's deadline for amending pleadings, twelve months after the close of discovery, three months after summary judgment was decided, and with trial just four months away," Pls.' Opp'n at 2. In Gaither, the plaintiff sought "leave to amend her complaint in order to plead her Section 1983 claim in the alternative under the Fifth and Eighth Amendments" six weeks after another member of this court had ruled on the parties' summary judgment motions. 272 F.R.D. at 251. In its earlier summary judgment ruling, the Gaither court "chastised both parties for failing to articulate the legal principles governing [the p]laintiff's Section 1983 claim" and

> because the parties completely failed to address [the plaintiff's] detention status, and because the same basic standard of 'deliberate indifference' is generally applied to both Fifth and Eighth Amendment claims, the Court declined to resolve the question of [the plaintiff's] detention status . . . and proceeded to address in detail the factual disputes that otherwise precluded summary judgment on [the p]laintiff's Section 1983 claim.

Id. at 250-51 (quoting Estate of Gaither ex rel. Gaither v. District of Columbia, 655 F. Supp. 2d 69, 85-86 (D.D.C. 2009)). In applying the more liberal standard of Rule 15(a) in assessing whether to permit the plaintiff to amend her complaint, the court held that the plaintiff did not unduly delay seeking the proposed amendment because the "[p]laintiff acted with reasonable promptness once potential defects in her Section 1983 claim were brought out into the open," the "[d]efendants [could not] credibly claim that [the p]laintiff [sought] to inject a fresh claim or new allegations into this action," and the "[p]laintiff's proposed amendment would merely clarify the theories upon which she relies without expanding or otherwise altering the scope of th[e] action in any meaningful manner." Id. at 252 (emphasis added).

Here, defendant Robert Elwood's reliance on the rationale and holding in Gaither is unavailing for several reasons due to the distinguishable facts currently before the Court. Similar

to <u>Harrison</u> and unlike this case, the <u>Gaither</u> court was not tasked with determining whether the more liberal standard of "when justice so requires" of Rule 15(a) or the heightened "good cause" standard of Rule 16(b) was the applicable standard. Moreover, defendant Robert Elwood's proposed amendments do not simply clarify the legal theories he previously relied on, as was the situation in <u>Harrison</u>; rather they "offer alternative theories of relief . . . [that] would [purportedly] ensure that there is a remedy for the harm alleged in the existing counterclaim." Def.'s Reply at 6. And unlike the plaintiff in <u>Gaither</u>, who sought to amend her complaint to address issues that the court declined to resolve in its summary judgment opinion, defendant Robert Elwood proposes amendments to his existing counterclaim that specifically relate to issues the Court addressed in its summary judgment ruling. <u>See generally</u> Def.'s Mot; <u>see also</u> Def.'s Reply at 2. In essence, defendant Robert Elwood seeks to assert fresh claims, and to support these new claims and his existing claims, he seeks to plead additional factual allegations that he knew about for more than a year, which he could have sought leave to include as an amendment earlier in the proceedings. Thus, defendant Robert Elwood's reliance on <u>Gaither</u> is of no avail.

Accordingly, because defendant Robert Elwood moves to amend his counterclaim for the purpose of responding to the Court's summary judgment ruling so that there would allegedly be "meaningful relief . . . available to [Robert] Elwood if the facts alleged in the existing counterclaim are proven," Def.'s Reply at 1-2, and because he waited for more than a year and a half after the Scheduling Order's deadline for amending pleadings, a year after discovery closed, and three months after the Court's summary judgment ruling to plead factual allegations that he already knew and could have alleged much earlier in these proceedings, the Court finds that his explanation for his tardiness in bringing the proposed amendments do not constitute "good

cause." See Lurie, 589 F. Supp. 2d at 24 ("Allowing the plaintiff to add claims merely so that it can engage in a tit-for-tat litigation strategy surely is not what the Federal Rules mean by 'good cause.' The plaintiff's inadequate explanation, combined with the fact that the motion for leave to file an amended complaint was filed almost a year after the Court's deadline, two years after the defendant's answer, and two weeks after the close of discovery, leads the Court to conclude that the plaintiff cannot amend his complaint under the Rule 16(b) 'good cause' standard."). Because defendant Robert Elwood has not showed that he acted with diligence, "the Court's inquiry must end, regardless of whether the amendment will assist the factfinder or result in prejudice to the plaintiff." A Love of Food, 292 F.R.D. at 145 (citing Kellogg Brown & Root Servs., 285 F.R.D. at 136).

### III.   CONCLUSION

For the foregoing reasons, the Court must deny the defendant's motion for leave to file a second amended counterclaim.

**SO ORDERED** this 1st day of September, 2016.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.